DARYL HOPKINS AND DANNY RAY PEELE, PETITIONERS-APPELLANTS v. NASH COUNTY AND THE NASH COUNTY BOARD OF ADJUSTMENT, RESPONDENTS-APPELLEES

No. COA01-378

(Filed 19 March 2002)

**Zoning— special use permit—stump dump—whole record test—use not in harmony with surrounding area**

The trial court did not err by applying the whole record test and denying petitioners' application for a special use permit for a stump dump because even though the land is zoned for such use, respondent county board of adjustment has met its burden of showing that the development will not be in harmony with the surrounding area since the area has become residential and the proposed site would bring additional traffic, noise, and dust directly into the residential area.

Appeal by petitioners from order entered 10 January 2001 by Judge Cy A. Grant, Sr., in Nash County Superior Court. Heard in the Court of Appeals 31 January 2002.

*The Brough Law Firm, by Robert E. Hornik, Jr., for petitioners-appellants.*

*Poyner & Spruill L.L.P., by Richard J. Rose and Gregory S. Camp, for respondents-appellees.*

BRYANT, Judge.

This is the case of a stump dump denied. Petitioners, Daryl Hopkins and Danny Ray Peele, applied for a special use permit from the Nash County Board of Adjustment (Board) to use land zoned for A-1 agricultural purposes as a clay borrow pit and land clearing and inert debris [LCID] landfill. The function of a clay borrow pit is to mine clay from the pit and move it to an off-site location. The pit can then be filled with tree stumps and limbs (thus, a "stump dump"). These are permissible uses for land zoned A-1 for agricultural purposes.

The Board denied the permit on 28 August 2000 after finding that, although there was evidence that the application must be granted, there was rebuttal evidence that the application should be denied because the development would more probably than not: 1) materially endanger the public health or safety; 2) substantially injure the value of adjoining or abutting property; and 3) fail to conform with the land development plan. Petitioners filed a Petition for Writ of Certiorari in the Nash County Superior Court on 13 October 2000. The Superior Court granted certiorari and on 10 January 2001 affirmed the Board's denial of the permit. Petitioners appeal.

Petitioners claim, inter alia, that the Board's findings in support of its decision to deny the application for a special use permit were not supported by substantial evidence in the record.

## I. Standard of Review

When reviewing the trial court's decision, this Court must determine: 1) whether the trial court used the correct standard of review; and, if so, 2) whether it properly applied this standard. *C.C. & J. Enters. v. City of Asheville*, 132 N.C. App. 550, 512 S.E.2d 776 (1999). When the Superior Court grants certiorari to review a decision of the Board, it functions as an appellate court rather than a trier of fact. *See*

*Sun Suites Holdings, LLC v. Bd. of Aldermen,* 139 N.C. App. 269, 533 S.E.2d 525 (2000).

Our Supreme Court has established the following guidelines for reviewing special zoning request decisions:

(1) Reviewing the record for errors in law, (2) Insuring that procedures specified by law in both statute and ordinance are followed, (3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents, (4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and (5) Insuring that decisions are not arbitrary and capricious.

*Jennewein v. City Council of City of Wilmington,* 62 N.C. App. 89, 92-93, 302 S.E.2d 7, 9 (1983).

The standard of review depends on the nature of the error of which the petitioner complains. If the petitioner complains that the Board's decision was based on an error of law, the superior court should conduct a de novo review. *C.C. & J. Enters.,* 132 N.C. App. at 552, 512 S.E.2d at 769. If the petitioner complains that the decision was not supported by the evidence or was arbitrary and capricious, the superior court should apply the whole record test. *Id.* The whole record test requires that the trial court examine all competent evidence to determine whether the decision was supported by substantial evidence. *Hedgepeth v. N.C. Div. of Servs. for the Blind,* 142 N.C. App. 338, 347, 543 S.E.2d 169, 174 (2001).

## II. Substantial Evidence

In this case, petitioners complain that the Board's findings in support of its decision to deny petitioners' application for a special use permit were not supported by substantial evidence in the record. When addressing this argument, the Superior Court should have applied the whole record test. The 10 January 2001 Order of the Superior Court states that the whole record test should be applied to issues of whether the Board's decision was supported by substantial evidence. Because the Superior Court used the correct test, we next determine whether the trial court properly applied the whole record test.

The Order states that the trial court reviewed petitioners' petition for a special use permit, the Record of the proceedings, oral argument of counsel for both sides and the briefs submitted by both sides. The

trial court then determined that there was "competent, material, and substantial evidence" in the record to support the Board's findings. "Substantial evidence" must be "more than a scintilla or a permissible inference." *Wiggins v. N.C. Dep't of Human Resources,* 105 N.C. App. 302, 306, 413 S.E.2d 3, 5 (1992) (citing *Thompson v. Bd. of Educ.,* 292 N.C. 406, 233 S.E.2d 538 (1977)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Tate Terrace Realty Investors, Inc. v. Currituck County,* 127 N.C. App. 212, 218, 488 S.E.2d 845, 849 (1997) (citing *CG & T Corp. v. Bd. of Adjustment of Wilmington,* 105 N.C. App. 32, 40, 411 S.E.2d 655, 660 (1992)).

Subsection 4-7.5(H) of the Nash County Uniform Development Ordinance states:

(H) Subject to (I), the Board of Adjustment or the Board of Commissioners, respectively, *shall* approve the requested [special use] permit *unless* it concludes, based upon the information submitted at the hearing, that:

(1) The requested permit is not within its jurisdiction according to the Table of Permissible Uses; or

(2) The application is incomplete; or

(3) If completed as proposed in the application, the development will not comply with one or more requirements of this Ordinance.

Nash County, N.C., Uniform Development Ordinance art. 4, § 4-7.5(H) (1998) (emphases added). Subsections 4-7.5(I)(1) through (3) state:

(I) Even if the permit-issuing board finds that the application complies with all other provisions of this Ordinance, it may still deny the permit if it concludes, based upon the information submitted at the hearing, that if completed as proposed, the development, more probably than not:

(1) Will materially endanger the public health or safety; *or*

(2) Will substantially injure the value of adjoining or abutting property; *or*

(3) Will not be in harmony with the area in which it is to be located . . . .

Nash County, N.C., Uniform Development Ordinance art. 4, § 4-7.5(I)(1) to (3) (1998) (emphases added). Because of the disjunctive conjunction, "or," the Board need only find one basis for denying the permit. *See Howard v. City of Kinston*, 148 N.C. App. 238, 558 S.E.2d 221. Finally, subsection 4-7.5(J) states:

> (J) The burden of persuasion on the issue of whether the development, if completed as proposed, will comply with the requirements of this Ordinance remains at all times on the applicant. The burden of persuasion on the issue of whether the application should be turned down for any of the reasons set forth in Subsection (I) rests on the party or parties urging that the requested permit should be denied.

Nash County, N.C., Uniform Development Ordinance art. 4, § 4-7.5(J) (1998). We are not persuaded that respondent has met its burden of showing that the development will materially endanger the public health or safety, or will substantially injure the value of nearby property. However, because we find that respondent has met its burden of showing that the development will not be in harmony with the surrounding area, we address only that issue.

### III. Harmony With the Area

Petitioners argue that the record of proceedings before the Board did not establish "more probably than not" that petitioners' proposal would not be in harmony with the area in which the LCID and clay borrow pit is located. Specifically, petitioners argue that "the inclusion of a use as a conditional use in a particular zoning district establishes a *prima facie* case that the permitted use is in harmony with the general zoning plan." This is a true statement. Petitioners argue that the proposed use is in harmony with the area and that the respondents have not shown by competent evidence in the record that the permit should be denied. While petitioners are correct that there is established a *prima facie* case that the permitted use is in harmony with the general zoning plan, the trial court found and we agree that respondents have presented competent evidence to sustain their burden of showing that the proposed use will not be in harmony with the surrounding area.

In *Vulcan Materials Co. v. Guilford County Bd. of County Comm'rs.*, 115 N.C. App. 319, 444 S.E.2d 639 (1994), Vulcan Materials Company [Vulcan] sought a special use permit to operate a stone quarry. Vulcan's land was zoned agricultural, which permitted the operation of a stone quarry. The Guilford County Board of County

Commissioners denied the permit after finding in part that there was no credible evidence that using the land for a rock quarry would be in harmony with the area in which it was located. The Superior Court reversed after finding that the denial of the permit was not based on material, competent and substantial evidence. In its argument to this Court, Vulcan argued that because "quarrying" is a permitted use within the context of the zoning ordinance, it necessarily is in "harmony with the area." *Id.* 324, 444 S.E.2d at 642. This Court disagreed, holding that if "competent, material, and substantial evidence reveals that the use contemplated is not in fact in 'harmony with the area in which it is to be located' the Board may so find." *Id.* at 324, 444 S.E.2d at 643.

In the case at bar, petitioners raise the same argument as Vulcan. Petitioners argue that the land they want to develop is zoned as an A-1 Agricultural District, which permits land demolition and construction debris landfills (disposal sites for stumps, limbs, leaves, concrete, brick, wood and uncontaminated earth); therefore, the use is in harmony with the general zoning plan. Our review of the record, however, reveals competent, material, and substantial evidence that this use is not in harmony with the surrounding area, which is also zoned A-1.

Thirty-five adjoining property owners were represented by counsel at the 18 August 2000 Board meeting. Testimony in the record reveals the following salient facts: Union Hope Community has existed for at least 200 years; it was once agricultural in nature, but is now residential; there are several residences across the street from the proposed site, and many single-family residences up and down NC 97 for one-half mile in each direction. One resident testified that Union Hope Community was a farming community "until it went residential;" there are numerous residences adjacent to the proposed site; between thirty and forty trucks per day would enter and exit the proposed site; the site would be open from 6 a.m. to 8 p.m., and would constantly bring additional traffic, noise and dust directly into a residential area. We find this to be competent, material, and substantial evidence that the LCID and clay borrow pit are not in harmony with the surrounding area, despite being in compliance with zoning ordinances. Because those opposing the granting of the permit met their burden of persuasion, this assignment of error is overruled.

Affirmed.

Judges TIMMONS-GOODSON and SMITH concur.