MYERS PARK HOMEOWNERS ASS'N v. CITY OF CHARLOTTE

[229 N.C. App. 204 (2013)]

MYERS PARK HOMEOWNERS ASSOCIATION, INC., a North Carolina
non-profit corporation, and BRIAN THOMAS ATKINSON, Petitioners
v.
CITY OF CHARLOTTE, a North Carolina body politic and corporate, THE CITY
OF CHARLOTTE ZONING BOARD OF ADJUSTMENT, an agency of the
City of Charlotte, and QUEENS UNIVERSITY OF CHARLOTTE,
a North Carolina non-profit corporation, Respondents

No. COA12-1346

Filed 20 August 2013

1. **Zoning—ordinance—prior determination—Class V street—rational basis**

   The superior court did not err by failing to reverse the decision of The City of Charlotte Zoning Board of Adjustment (ZBA) that affirmed the prior determination that Wellesley Avenue is a Class V street under a zoning ordinance. It is neither the superior court's nor the Court of Appeals' duty to second guess the decision of ZBA where there is a rational basis in the evidence.

2. **Zoning—prior determination—dormitories—residential buildings—excluded from floor area ratio calculations**

   The superior court did not err by failing to reverse the decision of The City of Charlotte Zoning Board of Adjustment that bound petitioners to the zoning administrator's prior determination that dormitories are residential buildings and excluded from floor area ratio calculations for R-3 zoning districts.

3. **Pleadings—motion for amendment—motion for alteration—inapplicable**

   The superior court did not err in a zoning case by denying petitioners' motions for amendment and/or alteration pursuant to N.C.G.S. § 1A-1, Rules 52 and 59 to have the superior court issue findings of fact and conclusions of law. Rules 52 and 59 were inapplicable.

Appeal by petitioners from orders filed 19 July 2012 and 30 August 2012 by Judge Timothy S. Kincaid in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 April 2013.

*Kenneth T. Davies; and Currin & Currin, by Robin T. Currin, for petitioner appellants.*

*Robinson Bradshaw & Hinson, P.A., by Richard A. Vinroot and John H. Carmichael, for Queens University of Charlotte respondent appellee.*

*Assistant City Attorney Thomas E. Powers III, and Senior Assistant City Attorney Terrie Hagler-Gray, for the City of Charlotte respondent appellee.*

McCULLOUGH, Judge.

Myers Park Homeowners Association, Inc. ("MPHA"), and Brian Thomas Atkinson ("Mr. Atkinson") (together "petitioners") appeal from the superior court's orders affirming the decision of The City of Charlotte's Zoning Board of Adjustment ("ZBA") and denying petitioners' motion for amendment of order and/or alteration or amendment of order. For the following reasons, we affirm.

## I. Background

This case concerns the recent expansion of Queens University of Charlotte ("Queens"), a university located on a 24.93-acre tract of land within the Myers Park neighborhood in the City of Charlotte. Pursuant to the Zoning Ordinance of the City of Charlotte (the "zoning ordinance"), Myers Park is zoned as an R-3 single family district. Under Section 9.201 of the zoning ordinance, R-3 districts are directed toward suburban single-family living. Nevertheless, Section 9.203 of the zoning ordinance provides that certain limited institutional uses are permitted under prescribed conditions. Universities, colleges, and junior colleges are one of the limited institutional uses permitted in a district zoned R-3 provided that, among other conditions, the primary vehicular access to the campus is not by way of a Class VI (local) street and the campus does not exceed the maximum floor area ratio ("FAR") for nonresidential buildings in an R-3 district. *See* Sections 9.203(22) & 9.205(b).

Relevant to this case, the recent expansion of Queens included the construction of two structures on their Myers Park campus: (1) a seven-story 210,495-square-foot structure consisting of a five-level parking deck and two-story dormitory above the parking deck (the "deck/dormitory"); and (2) a three-story 142,342-square-foot structure near the deck/dormitory to be used as an athletic facility (the "Levine Center"). While planning the expansion, Queens' Vice President for Campus Planning and Services, Mr. Bill Nichols, submitted an inquiry to Zoning Administrator Katrina Young (the "zoning administrator"), concerning

whether dormitories were properly excluded from the FAR calculations. On 28 January 2010, the zoning administrator provided an interpretation confirming that dormitories were properly excluded. Thereafter, Queens received administrative site plan approval from the City of Charlotte.

Following site plan approval, on 10 November 2011, Mr. Atkinson sent a letter to the Charlotte-Mecklenburg Planning Director, Ms. Deborah Campbell, raising potential zoning issues. The Planning Director responded to Mr. Atkinson's concerns by email on 22 November 2011. The pertinent portions of the Planning Director's interpretation are summarized as follows: (1) the Levine Center is a part of Queens and is considered an accessory use allowed in an R-3 zoning district; and (2) access to the Levine center is provided by Wellesley Avenue, a Class V (collector) street, compliant with the zoning ordinance.

On 22 December 2011, Mr. Atkinson and MPHA filed a Hearing Request Application and an Appeal Application to ZBA. Amended applications were later filed on 20 January 2012. In the amended applications, petitioners contended the following: (1) the Levine Center was erroneously defined as a general accessory use to Queens and is more properly defined as a stadium; (2) Wellesley Avenue was improperly categorized as a Class V street and is more appropriately categorized as a Class VI street; and (3) Queens exceeded the maximum FAR when considering the Levine Center and other recently approved construction projects.

ZBA held a hearing on petitioners' appeal on 28 February 2012. Thereafter, ZBA notified petitioners of its decision to uphold the prior interpretations, affirming that: (1) the Levine Center and uses within are accessory to Queens; (2) Wellesley Avenue is not a Class VI street; and (3) Queens does not exceed the maximum FAR. ZBA's decision was filed in the Charlotte-Mecklenburg Planning Department on 13 March 2012.

On 12 April 2012, petitioners filed a Petition for Review in the Nature of Certiorari in Mecklenburg County Superior Court seeking review of ZBA's decision. Additionally, petitioners asserted that ZBA violated their procedural due process rights. The petition was granted and a hearing was held in Mecklenburg County Superior Court before the Honorable Timothy S. Kincaid on 19 July 2012. Upon conclusion of the hearing, the trial court affirmed the decision of ZBA and dismissed petitioners' claims.

On 30 July 2012, petitioners filed a motion pursuant to Rules 52 and 59 of the North Carolina Rules of Civil Procedure seeking amendment and/or alteration of the trial court's 19 July 2012 order. Specifically, petitioners requested that the court make findings of fact and additional

conclusions of law. Following a 30 August 2012 hearing, the trial court denied petitioners' motion.

Petitioners' now appeal to this Court from the superior court's orders affirming the decision of ZBA and denying their motion for amendment and/or alteration.

## II. Analysis

On appeal, petitioners raise two issues concerning the superior court's order upholding ZBA's decision: (1) whether the superior court erred in affirming ZBA's decision affirming the categorization of Wellesley Avenue as a Class V street; and (2) whether the superior court erred in affirming ZBA's decision affirming the interpretation that dormitories are excluded from FAR calculations in R-3 zoning districts. Additionally, petitioners contend that the superior court erred in denying their motion for amendment and/or alteration of order pursuant to Rules 52 and 59 of the North Carolina Rules of Civil Procedure. We address each issue.

### Standard of Review

As this Court has recognized, a different standard of review applies at each level of an appeal from a decision of a zoning board. *Davidson Cty. Broadcasting, Inc. v. Rowan Cty. Bd. of Comm'rs*, 186 N.C. App. 81, 86, 649 S.E.2d 904, 909 (2007). ZBA's "findings of fact and decisions based thereon are final, subject to the right of the courts to review the record for errors in law and to give relief against its orders which are arbitrary, oppressive or attended with manifest abuse of authority." *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 12, 565 S.E.2d 9, 17 (2002) (internal quotation marks and citation omitted). Thus, "[w]hen the Superior Court grants certiorari to review a decision of [ZBA], it functions as an appellate court rather than a trier of fact." *Hopkins v. Nash Cty.*, 149 N.C. App. 446, 447, 560 S.E.2d 592, 593–94 (2002).

"The proper standard for the superior court's judicial review depends upon the particular issues presented on appeal." *Mann Media, Inc.*, 356 N.C. at 13, 565 S.E.2d at 17 (internal quotation marks and citations omitted).

> If the petitioner complains that the [ZBA's] decision was based on an error of law, the superior court should conduct a de novo review. If the petitioner complains that the decision was not supported by the evidence or was arbitrary and capricious, the superior court should apply the whole record test.

*Hopkins*, 149 N.C. App. at 448, 560 S.E.2d at 594 (citations omitted).

> Under a *de novo* review, the superior court considers the matter anew[] and freely substitut[es] its own judgment for the agency's judgment. When utilizing the whole record test, however, the reviewing court must examine all competent evidence (the "whole record") in order to determine whether the agency decision is supported by "substantial evidence." The "whole record" test does not allow the reviewing court to replace the [b]oard's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*.

*Mann Media, Inc.*, 356 N.C. at 13-14, 565 S.E.2d at 17-18 (internal quotation marks and citations omitted) (alterations in original). "When the issue before the court is whether [ZBA] erred in interpreting an ordinance, the court shall review that issue de novo. The court shall consider the interpretation of [ZBA], but is not bound by that interpretation, and may freely substitute its judgment as appropriate." N.C. Gen. Stat. § 160A-393(k)(2) (2011). On appeal to this Court, "[o]ur review of a trial court's zoning board determination is limited to determining [(1)] whether the superior court applied the correct standard of review, and to determining [(2)] whether the superior court correctly applied that standard." *MNC Holdings, LLC v. Town of Matthews*, ___ N.C. App. ___, ___, 735 S.E.2d 364, 367 (2012) (internal quotation marks and citation omitted) (alterations in original).

In the superior court's 19 July 2012 order, the superior court stated that it "conducted a *de novo* review concerning questions of law, and a 'whole record' review concerning issues of fact." Based on the record, the superior court then "concluded as a matter of law that ZBA's decision concerning the three (3) issues in dispute (*i.e.*, upholding the City's interpretations thereof) was correct, and should be affirmed."

It is evident from the record that the superior court applied the correct standard of review. On appeal, however, petitioners challenge the interpretation of the zoning ordinance. Because issues concerning the interpretation of zoning ordinances are questions of law, we likewise review the issues *de novo*. *See MNC Holdings, LLC*, ___ N.C. App. at ___, 735 S.E.2d at 367.

## Classification of Wellesley Avenue

[1] The first issue raised on appeal is whether the superior court erred in failing to reverse the decision of ZBA that affirmed the prior

determination that Wellesley Avenue is a Class V street under the zoning ordinance. The classification of Wellesley Avenue is significant because Wellesley Avenue serves as the primary vehicular access to Queens. Pursuant to Section 9.203(22)(c) of the zoning ordinance, in order for a university to be located within an R-3 district, primary vehicular access must not be by way of a Class VI street.

On appeal, petitioners reexamine the evidence presented to ZBA and argue the only conclusion that can be reached from a proper interpretation of the zoning ordinance is that Wellesley Avenue is a Class VI street. Upon *de novo* review of the zoning ordinance, we disagree and affirm the interpretation of the zoning administrator, ZBA, and superior court — Wellesley Avenue is not a Class VI street and its use as the primary vehicular access to Queens is proper.

Section 2.201 of the zoning ordinance establishes a hierarchy of street classifications based on function and design. For public streets, the classifications range from Class I to Class VI. Pertinent to this appeal, the zoning ordinance differentiates between collector streets, classified as Class V, and local streets, classified as Class VI. A Class V collector street is defined as "[a] roadway which assembles traffic from local streets and distributes it to the nearest arterial street, providing direct primary access to low/medium density land uses and designed to carry low to moderate traffic volumes at low to moderate speeds." A Class VI local street is defined as "[a] two-lane roadway which provides access directly to adjoining low/medium density land uses and conducts traffic to local limited and Class V streets which serve the area. The Class VI road is designed to accommodate low volumes of traffic at low speeds."

When comparing the definitions of Class V and Class VI streets, there are three primary distinctions: (1) function, (2) traffic volume, and (3) speed. It is evident from the record that ZBA considered each of these distinctions during its deliberations. ZBA then voted 4 to 1 to uphold the determination that Wellesley Avenue is not a Class VI street.

Although petitioners raise the issue concerning the classification of Wellesley Avenue as a challenge to ZBA's interpretation of the zoning ordinance, their argument on appeal focuses on the sufficiency of the evidence. Although we review the interpretation of a zoning ordinance *de novo*, we review the sufficiency of the evidence under the whole record test. *See Hopkins*, 149 N.C. App. at 448, 560 S.E.2d at 594; *Mann Media, Inc.*, 356 N.C. at 13-14, 565 S.E.2d at 17-18.

> When the Court of Appeals applies the whole record test
> and reasonable but conflicting views emerge from the

evidence, the Court cannot substitute its judgment for the administrative body's decision. The Court, however, must take into account whatever in the record fairly detracts from the weight of the evidence which supports the decision. The Court must ultimately decide whether the decision has a rational basis in the evidence.

*CG&T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 40, 411 S.E.2d 655, 660 (1992) (internal quotation marks and citations omitted).

At the 28 February 2012 ZBA hearing, testimony was offered from various individuals concerning the classification of Wellesley Avenue. This testimony included presentations from two individuals tendered as experts, Mr. Michael Davis, a Charlotte Department of Transportation employee, and Mr. Walter Fields, a former city planner for the Charlotte-Mecklenburg Planning Commission.

At the hearing, Mr. Davis was tendered as a transportation expert and testified concerning each of the distinctions between Class VI and Class V streets. Regarding function, Mr. Davis opined that Wellesley Avenue met the functional components of a Class V street. Pursuant to definitions in the zoning ordinance, a Class V street "assembles traffic from local streets and distributes it to the nearest arterial street" whereas a Class VI street "conducts traffic to local limited and Class V streets[.]" Mr. Davis testified that Wellesley Avenue connects two major arterial streets, Queens Road West and Selwyn Avenue, and not local limited or Class V streets. Therefore, in terms of function, Mr. Davis concluded that Wellesley Avenue more closely fit the definition of a Class V street than a Class VI street. Mr. Davis then testified concerning the distinctions in traffic volume and speed on Class V and Class VI streets. Pursuant to the definitions in the zoning ordinance, a Class V street is "designed to carry low to moderate traffic volumes at low to moderate speeds[]" whereas a Class VI street "is designed to accommodate low volumes of traffic at low speeds." Because the zoning ordinance does not spell out what constitutes low to moderate traffic volumes and speed, Mr. Davis compared Wellesley Avenue to other Class V streets. Regarding traffic volume, Mr. Davis testified that the average traffic volume on minor collector streets is 1,300 vehicles per day and on all collector streets, including minor and major collector streets, is 2,100 vehicles per day. When compared, Wellesley Avenue exceeds the average traffic volume with an average of 2,700 vehicles per day. Regarding speed, Mr. Davis testified that Wellesley Avenue has a posted speed limit of 25 miles per hour. While 25 miles per hour is low, Mr. Davis indicated "that's a typical speed limit posting on a collector street[,]" as "54 percent of the collector miles in Charlotte are

posted 25 miles per hour." Thus, while acknowledging that the design component is subjective and it is arguable that Wellesley Avenue is a Class VI street, Mr. Davis testified that the traffic volume and speed on Wellesley Avenue were consistent with other Class V streets. As a result, Mr. Davis concluded that Wellesley Avenue was properly classified as a Class V street under the definition in the zoning ordinance.

Mr. Fields was then tendered as an expert in planning and regulatory development and offered testimony tending to show that Wellesley Avenue was a Class VI street. Mr. Fields testified that the definition of a collector street contemplates a road that can physically handle the traffic. Moreover, Mr. Fields indicated that a street cannot be classified without considering the larger network of streets in the area. Considering the physical components of Wellesley Avenue, including width and speed bumps, and considering the role of Wellesley Avenue in the larger network of streets in Myers Park, Mr. Fields opined that Wellesley Avenue was better suited as a Class VI street.

It is evident from ZBA's deliberations that ZBA afforded greater weight to the testimony of Michael Davis and ultimately consolidated his testimony into a single finding of fact, "Charlotte Department of Transportation (CDOT) has determined that Wellesley Avenue is not a Class VI street." We hold this finding of fact sufficient to support ZBA's decision to uphold the zoning administrator's interpretation that Wellesley Avenue is not a Class VI street and to inform the parties and this Court of what induced its decision. *See Humble Oil & Refining Co. v. Bd. of Aldermen of Town of Chapel Hill*, 284 N.C. 458, 471, 202 S.E.2d 129, 138 (1974) (providing that the facts must be sufficient to inform the parties and the court of the basis for the board's decision); *see also* N.C. Gen. Stat. § 160A-393(1)(2) (2011) ("[F]indings of fact are not necessary when the record sufficiently reveals the basis for the decision below . . . ."). It is neither the superior court's nor this Court's duty to second guess the decision of ZBA where there is a rational basis in the evidence. *CG&T Corp.*, 105 N.C. App. at 40, 411 S.E.2d at 660. Consequently, we affirm.

### Floor Area Ratio

[2] The second issue raised on appeal is whether the superior court erred in failing to reverse the decision of ZBA that bound petitioners to the zoning administrator's prior determination that dormitories are residential buildings and excluded from FAR calculations for R-3 zoning districts. Petitioners argue dormitories should have been included.

At the outset of our analysis, we note that petitioners did not specifically raise the issue of whether dormitories are included or excluded from FAR calculations in their appeal application to ZBA. Instead, the issue arose during ZBA's consideration of the third issue on appeal, whether Queens exceeded the maximum FAR when considering the Levine Center and other recently approved construction projects. At the hearing, ZBA refused to allow petitioners to argue that dormitories should be included in FAR calculations because the zoning administrator had already issued an interpretation on 28 January 2010, concluding that dormitories were properly excluded. ZBA reasoned that petitioners were bound by the zoning administrator's prior interpretation because they failed to appeal it within thirty days as required by Section 5.103 of the zoning ordinance.

In their petition for review to superior court, petitioners asserted that it was a violation of due process to bind them to an interpretation to which they had no actual or constructive notice. As noted above, the superior court conducted a *de novo* review of issues of law and a whole record review of the evidence and affirmed ZBA's decision.

Now on appeal to this Court, petitioners continue to argue their due process rights were violated. Queens and the City of Charlotte dispute petitioners' claim, yet neither expends any effort to counter petitioners' assertions that they did not have notice of the zoning administrator's 28 January 2010 interpretation prior to the ZBA hearing and the thirty-day appeal period does not begin to run under Section 5.103 of the zoning ordinance until they receive notice of the interpretive decision. *See Meier v. City of Charlotte*, 206 N.C. App. 471, 481, 698 S.E.2d 704, 711 (2010) ("The appeal period begins to run as soon as the aggrieved party receives actual or constructive notice of the interpretative decision."). Instead, both Queens and the City of Charlotte argue the merits of the zoning administrator's interpretation that dormitories are excluded from FAR calculations.

Where the interpretation of a zoning ordinance is subject to *de novo* review and a *de novo* review of the zoning ordinance by this Court will remedy the alleged due process violations, we accept petitioners' due process argument for purposes of this appeal and interpret the zoning ordinance *de novo. See Welter v. Rowan Cty. Bd. of Comm'rs*, 160 N.C. App. 358, 363, 585 S.E.2d 472, 476 (2005) (quoting *Eastern Outdoor, Inc. v. Board of Adjust. of Johnston Cty.*, 150 N.C. App. 516, 519, 564 S.E.2d 78, 80-81 (2002)) ("[I]nstead of remanding such a case to the superior court for exercise of the proper *de novo* review of the zoning ordinance's interpretation, 'an appellate court's obligation to review

a superior court order for errors of law . . . can be accomplished by addressing the dispositive issue(s) before the agency and the superior court . . . .") (emphasis omitted).

When interpreting a zoning ordinance, "we attempt to ascertain and effectuate the intent of the legislative body. Unless a term is defined specifically within the ordinance in which it is referenced, it should be assigned its plain and ordinary meaning. In addition, we avoid interpretations that create absurd or illogical results." *Ayers v. Bd. of Adjustment for Town of Robersonville*, 113 N.C. App. 528, 531, 439 S.E.2d 199, 201 (1994) (citations omitted). Upon review, we hold that the provisions of the zoning ordinance governing FAR calculations are relatively straightforward.

Section 2.201 of the zoning ordinance defines FAR as "[t]he total floor area of a building or buildings divided by the gross area of the lot or parcel." Pursuant to Section 9.205(1)(b) of the zoning ordinance, the maximum FAR for non-residential buildings in an R-3 district is .50. Residential buildings are not considered in FAR calculations.

The issue addressed by the zoning administrator and now challenged on appeal is whether dormitories on Queens' campus are residential buildings excluded from FAR calculations. If dormitories are residential buildings and excluded from FAR calculations, Queens satisfies the FAR requirement. If dormitories are non-residential buildings, additional FAR calculations will be required to determine whether Queens meets the FAR requirement.

Upon review of the zoning ordinance, we hold that dormitories are residential buildings and properly excluded from FAR calculations. Our interpretation is guided by Section 2.201 of the zoning ordinance. First, Section 2.201 of the zoning ordinance defines a dormitory as:

> A building containing bathroom facilities available for common use by the *residents* of the building, which is *occupied or intended to be occupied as the dwelling* for more than six persons who are not related by blood, marriage, or adoption but who are enrolled in, affiliated with or employed by the same educational, religious, or health institution.

(Emphasis added.) Second, the definition of "residential use" in Section 2.201 of the zoning ordinance includes dormitory.

Although petitioners concede that dormitories are classified as a residential use under the zoning ordinance, petitioners contend that

a dormitory cannot maintain the classification as a residential use when Section 9.204(4) of the zoning ordinance permits dormitories in R-3 districts solely "as an accessory use to a university, college or junior college located on the same lot." Petitioners instead argue that, where dormitories at Queens are permitted in Myers Park only as accessories to Queens, the dormitories must take on the same classification as Queens, an institutional use. We disagree. There is nothing in the zoning ordinance that necessitates the interpretation petitioners now urge this Court to adopt. The fact that a dormitory is allowed in an R-3 district as an accessory to an institutional use but not as a principal use does not require that the dormitory also be classified as an institutional use.

Where dormitory is defined as a dwelling for residents and residential use is defined to include dormitories, we hold the definitions provided in the zoning ordinance control. Thus, we affirm the zoning administrator's interpretation that dormitories are excluded from FAR calculations.

### Rules 52 and 59 Motions

[3] The final issue raised on appeal is whether the superior court erred in denying petitioners' motions for amendment and/or alteration pursuant to Rules 52 and 59 of the North Carolina Rules of Civil Procedure. In the motion for amendment and/or alteration, petitioners' sought to have the superior court issue findings of fact and conclusions of law. We, however, find Rules 52 and 59 inapplicable in the present case. Therefore, we hold the superior court did not err.

As we previously noted, "[w]hen the Superior Court grants certiorari to review a decision of [ZBA], it functions as an appellate court rather than a trier of fact." *Hopkins*, 149 N.C. App. at 447, 560 S.E.2d at 593–94. Sitting as an appellate court, the superior court "may affirm the decision, reverse the decision and remand the case with appropriate instructions, or remand the case for further proceedings." N.C. Gen. Stat. § 160A-393(*1*). As we held in *Markham v. Swails*, we are of the opinion that Rule 52(b) has no application where the superior court sits in the posture of an appellate court. 29 N.C. App. 205, 208, 223 S.E.2d 920, 922 (1976). Similarly, we hold that a motion pursuant to Rule 59, concerning new trials and amendment of judgments, is inapplicable in the present case.[1]

---

1. To the extent petitioners argue the superior court failed to consider their due process argument, the superior court conducted a *de novo* review of issues of law and affirmed. Furthermore, we addressed the issue in this opinion.

### III. Conclusion

For the reasons discussed above, we affirm the orders of the superior court.

Affirmed.

Judges CALABRIA and STEELMAN concur.