IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-86

Filed 15 August 2023

Orange County, No. 21CVS996

ALISON ARTER, Petitioner,

v.

ORANGE COUNTY, STEPHEN M. BURT, SHARON C. BURT, JODI BAKST, and REAL ESTATE EXPERTS, Respondents.

Appeal by petitioner from order entered 23 June 2022 by Judge R. Allen Baddour, Jr., in Orange County Superior Court. Heard in the Court of Appeals 6 June 2023.

> *Petesch Law, by Andrew J. Petesch, for petitioner-appellant.*
>
> *James C. Bryan and Joseph Herrin for respondent-appellee Orange County.*
>
> *The Brough Law Firm, PLLC, by Robert E. Hornik, Jr., for respondents-appellees Stephen M. Burt, Sharon C. Burt, Jodi Bakst, and Real Estate Experts.*

GORE, Judge.

Petitioner, Alison Arter, appeals from the superior court's Order affirming the decision of the Orange County Board of Adjustment ("BOA"). The trial court's order upheld a written determination that land use buffer regulations found in Section 6.8.6 of the Orange County Unified Development Ordinance ("UDO") did not apply to a gravel road which divides petitioner's property from the adjacent subdivision at issue. Petitioner asserts, among other things, that the superior court: (i)

misinterpreted various provisions of the Orange County UDO and (ii) erred in determining that the BOA's decision was supported by competent, material, and substantial evidence in the record.

Petitioner appeals as a matter of right from a final judgment of superior court pursuant to N.C. Gen. Stat. section 7A-27. Upon review, we affirm.

**I.**

Petitioner owns and resides on her property (the "Arter Property") located in Orange County, North Carolina. Petitioner purchased the property from respondents Stephen Burt and Sharon Burt in 2007. As of February 2021, the Burts still owned the adjoining property—an approximately 55-acre tract of land—which respondent Jodi Bakst eventually developed into a 12-lot residential subdivision (the "Array Subdivision").

Orange County implements zoning, subdivision, and other land use regulations in their UDO. Both the Arter Property and the Array Subdivision are zoned R-1 (Rural Residential) pursuant to the UDO. Petitioner has continuously used the Arter Property for the operation and management of equine facilities. The Array Subdivision is a low intensity "flexible" residential subdivision.

The primary concern petitioner expressed regarding the Array Subdivision is that the gravel road entrance into the subdivision—Array Drive—runs generally parallel in some areas to the common boundary line between the Arter Property and Array Subdivision. Petitioner claimed that the proximity of Array Drive to her horse

stable would be injurious to her horses, and that a buffer should have been required between her property and the road. Petitioner claims to operate an "active farm" on her property, that the UDO requires a 30-foot wide, Type B vegetated buffer along the common boundary line, and that the Table of Land Use Buffers found at UDO section 6.8.6(D) requires such a buffer. Petitioner's concerns led her to review proposed subdivision plans, attend the developer's neighborhood meeting, and consult with County Planning Staff.

After learning that Planning Staff were not going to implement a land buffer under the provisions of the UDO, petitioner submitted letters through counsel to Planning Supervisor Michael Harvey requesting an administrative determination on whether a land use buffer was required between the Arter Property and Array Subdivision. Harvey determined that the UDO does not require the establishment of a land use buffer when parcels have the same or similar general use designations. In Harvey's view, the question of whether a property was used for "Active Farm/Agriculture" was irrelevant and of no effect.

Petitioner appealed Harvey's 2021 determination to the Orange County BOA. The BOA upheld Harvey's determination by written decision dated 20 July 2021. Petitioner timely filed a Petition for Writ of Certiorari and, after a hearing on the merits, the Orange County Superior Court affirmed the BOA's decision by written order filed 23 June 2022. Petitioner timely filed notice of appeal to this Court on 22 July 2022.

## II.

When an appellate court reviews a superior court order regarding an agency decision, the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.

*Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 14, 565 S.E.2d 9, 18 (2002) (cleaned up).

## III.

It is evident from the record that the superior court applied the appropriate standard of review. The dispositive issue on appeal is whether the superior court erred in concluding that the Orange County BOA properly interpreted the provisions of the Orange County UDO. "Because issues concerning the interpretation of zoning ordinances are questions of law, we likewise review the issues *de novo.*" *Myers Park Homeowners Ass'n v. City of Charlotte*, 229 N.C. App. 204, 208, 747 S.E.2d 338, 342 (2013).

In general, municipal ordinances are to be construed according to the same rules as statutes enacted by the legislature. The basic rule is to ascertain and effectuate the intention of the municipal legislative body. We must therefore consider this section of the ordinance as a whole, and the provisions *in pari materia* must be construed together.

*George v. Edenton*, 294 N.C. 679, 684, 242 S.E.2d 877, 880 (1978) (cleaned up).

"Where the language of a[n] [ordinance] is clear, the courts must give the [ordinance]

its plain meaning; however, where the [ordinance] is ambiguous or unclear as to its meaning, the courts must interpret the [ordinance] to give effect to the [municipal] legislative intent." *Frye Reg'l Med. Ctr., Inc. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999) (citation omitted).

In this case, it is undisputed that ambiguity exists between Orange County UDO sections 6.8.6(B) and 6.8.6(D). Section 6.8.6(B) is entitled "Applicability" and states, "Land use buffers will be required based on the *zoning district* of the proposed use and the *zoning district* of the adjacent uses." In contrast, the heading of the "Land Use Buffer Table" found at section 6.8.6(D) refers to "Zoning *or Use* of Adjacent Properties." When determining buffer requirements based on zoning districts, both the Arter Property and the Array Subdivision are zoned R-1. Adjacent R-1 properties do not require a buffer under section 6.8.6.(D). However, if the Arter Property qualifies as an "active farm," then a 30-foot-wide buffer would be required under section 6.8.6(D) based on land use designation.

As noted by the trial court, the BOA, and the Orange County Planning Department, Article 1 of the Orange County UDO also includes various provisions intended to assist in the interpretation of the UDO and resolve ambiguity. Section 1.1.12 provides:

> 1.1.12 Headings and Illustrations
>
> Headings and illustrations contained herein are provided for convenience and reference only and do not define or limit the scope of any provision of this Ordinance. *In case*

> *of any difference between meaning or implication between the text of this Ordinance and any heading, drawing, table, figure, or illustration, the text controls.*

Thus, when sections 6.8.6(B) and 6.8.6(D) are construed *in pari materia* with section 1.1.12, it is evident that the plain text of section 6.8.6(B) controls over the table in section 6.8.6(D). Accordingly, we conclude that the BOA properly interpreted the UDO as requiring buffers based on zoning districts. Any issue of fact regarding land use is inconsequential where the text of the ordinance controls. The superior court properly upheld the BOA's determination on this basis.

## IV.

For the foregoing reasons, we determine that the superior court applied the appropriate standard of review and did so properly. Considering our resolution of this matter above, it is unnecessary to reach the remainder of petitioner's arguments.

AFFIRMED.

Judge RIGGS concurs.

Judge CARPENTER dissents by separate opinion.

No. COA23-86 – *Arter v. Orange Cnty.*

CARPENTER, Judge, dissenting.

I respectfully dissent from the majority opinion, in which the majority concludes the Orange County Board of Adjustment (the "Board") and the Orange County Superior Court "properly interpreted the [Orange County Unified Development Ordinance ("UDO")] as requiring buffers based on zoning districts." I disagree with the majority's interpretation of UDO § 6.8.6 and write separately to explain my reading of the ordinance. After careful consideration of the provisions of the UDO, I conclude UDO § 6.8.6 requires land use buffers according to zoning districts *or* land uses, as depicted in Table 6.8.6.D (the "Land Use Buffer Table"). Accordingly, I would reverse and remand the matter to the superior court with instructions to determine whether Alison Arter's ("Petitioner") property (the "Arter Property") constitutes an "active farm/agriculture" within the meaning of UDO § 6.8.6, and thus, necessitates a buffer to separate it from an adjacent subdivision.

On appeal, Petitioner argues the Board and the superior court erred by incorrectly interpreting UDO § 6.8.6 and by failing to consider whether the Arter Property constitutes "active farm/agriculture" for the purposes of applying the Land Use Buffer Table.

As the majority properly acknowledges, our review of this matter is limited to determining: (1) whether the superior court applied the correct standard of review; and (2) whether the superior court correctly applied that standard. *MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs.*, 169 N.C. App 809, 810, 610 S.E.2d 795–

96, *disc. rev. denied*, 359 N.C. 634, 616 S.E.2d 540 (2005).

In considering an appeal from a decision of a zoning board, the reviewing court's standard of review depends on the nature of the issue or issues presented on appeal. *Myers Park Homeowners Ass'n v. City of Charlotte*, 229 N.C. App 204, 207, 747 S.E.2d 338, 341 (2013). When the issue is whether the board erred in interpreting an ordinance, a question of law, the reviewing court reviews the issue de novo. *Id.* at 207, 747 S.E.2d at 342. Under de novo review, the reviewing court may consider the interpretation of the board, but is not bound by that interpretation, and may freely substitute its judgment as appropriate. *Id.* at 208, 747 S.E.2d at 342.

Here, in its 22 June 2022 Order ("the Order"), the superior court affirmed the Board's decision. As the majority notes, it appears from the Order that the superior court properly reviewed the Board's interpretation of the UDO de novo. *See MCC Outdoor, LLC*, 169 N.C. App at 810, 610 S.E.2d at 795–96. Thus, the next step is considering whether the superior court *correctly applied* the de novo standard. *See id.* at 810, 610 S.E.2d at 796.

Generally, "municipal ordinances are to be construed according to the same rules as statutes enacted by the legislature." *George v. Town of Edenton*, 294 N.C. 679, 684, 242 S.E.2d 877, 880 (1978). Statutory interpretation begins with an examination of the plain words of a statute, or in this case, an ordinance. *Lanvale Props., LLC v. Cnty. of Cabarrus*, 366 N.C. 142, 155, 731 S.E.2d 800, 810 (2012); *see George*, 294 N.C. at 684, 242 S.E.2d at 880. Similar to statutes, "[i]f the language of

2

the [ordinance] is clear and is not ambiguous, [this Court] must conclude that the legislat[ive body] intended the [ordinance] to be implemented according to the plain meaning of its terms." *Lanvale Props., LLC*, 366 N.C. at 155, 731 S.E.2d at 810 (citation omitted). If, however, the language is ambiguous, "courts [may] resort to canons of judicial construction to interpret meaning." *Jeffries v. Cnty. of Harnett*, 259 N.C. App. 473, 488, 817 S.E.2d 36, 47 (2018). "In interpreting a municipal ordinance, the basic rule is to ascertain and effectuate the intent of the legislative body." *Four Seasons Mgmt. Servs. v. Town of Wrightsville Beach*, 205 N.C. App. 65, 77, 695 S.E.2d 456, 463 (2010) (citations and quotation marks omitted).

"Zoning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be attained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the [o]rdinance as a whole." *Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966) (citation omitted). An ambiguous zoning ordinance "should be resolved in favor of the free use of property." *Id.* at 266, 150 S.E.2d at 443 (citation omitted).

In determining the meaning of UDO § 6.8.6, we should first examine the plain language of the ordinance. *See Lanvale Props., LLC,* 366 N.C. at 155, 731 S.E.2d at 810. Here, the relevant ordinance, UDO § 6.8.6(B), states: "[l]and use buffers [are] required based on the zoning district of the proposed use and the zoning district of the adjacent uses." In light of the plain language, it is unclear whether, and in what

3

manner, "the zoning district of the proposed use" or "the zoning district of the adjacent uses" dictates the applicability of land use buffers; thus, it requires referencing the related Land Use Buffer Table. Unlike UDO § 6.8.6(B), the Land Use Buffer Table indicates the application of land use buffers is determined using the zoning district *or* use of the subject and adjacent properties. Furthermore, the Land Use Buffer Table specifies the buffer type that is required, based upon the particular zoning districts or uses of the subject and adjacent properties. The language in UDO § 6.8.6(B), coupled with the conflicting Land Use Buffer Table, creates ambiguity as to whether the buffers apply to the zoning districts of subject and adjacent properties and/or land uses of subject and adjacent properties. Since there is ambiguity, rules of construction should be utilized to interpret the meaning of UDO § 6.8.6. *See Jeffries*, 259 N.C. App. at 488, 817 S.E.2d at 47.

"[W]hen interpreting provisions of a law that are all part of the same regulatory scheme, [this Court] should strive to find a reasonable interpretation so as to harmonize them rather than interpreting them to create irreconcilable conflict." *Visible Props., LLC v. Vill. of Clemmons*, 284 N.C. App. 743, 750, 876 S.E.2d 804, 810 (2022) (citation and quotation marks omitted). "Unless a term is defined specifically within the ordinance in which it is referenced, it should be assigned its plain and ordinary meaning. In addition, [this Court] avoid[s] interpretations that create absurd or illogical results." *Ayers v. Bd. of Adjustment for Town of Robersonville*, 113 N.C. App. 528, 531, 439 S.E.2d 199, 201 (1994) (citations omitted).

4

In this case, the UDO contains a pertinent rule of construction in section 1.1.12, which provides:

> [h]eadings and illustrations contained [in the UDO] are provided for convenience and reference only and do not define or limit the scope of any provision of this Ordinance. In case of any difference of meaning or implication between the text of this Ordinance and any heading, drawing, table, figure, or illustration, the text controls.

In other words, in the event of a conflict between the plain language of the UDO and a table, the text controls.

In this case, a conflict exists between the text of UDO § 6.8.6(B) and the Land Use Buffer Table because the text suggests the requirement of land use buffers is based on "zoning districts of proposed/adjacent uses;" however, the Land Use Buffer Table indicates it is based on "zoning *or* uses." (Emphasis added). If the difference in language is resolved pursuant to UDO § 1.1.12, the applicability of land use buffers should be based *solely* on the zoning districts of the proposed and adjacent uses. Yet, the Land Use Buffer Table does not indicate which columns or rows pertain to zoning districts and which pertain to land uses. Furthermore, this interpretation would disregard the columns in the Land Use Buffer Table that are not apparent zoning districts—including "active farm/agriculture," "interstate highway," "arterial street," and "collector street"—rendering an illogical result. *See Ayers*, 113 N.C. App. at 531, 439 S.E.2d at 201. For example, under this construction, Orange County's 100-foot-wide buffer requirement between any zoning district and an interstate highway

would be extinguished. For these reasons, UDO § 1.1.12 does not resolve the apparent conflict in UDO § 6.8.6 because the text of UDO § 6.8.6(B) does not, on its own, state when or how land use buffers are required.

The final step of this analysis is to consider the intent of the local legislative body and interpret UDO § 6.8.6 as to harmonize its various sections and eliminate internal conflict, which in this case, means recognizing and giving meaning to each column and row in the Land Use Buffer Table. *See Jeffries*, 259 N.C. App. at 488, 817 S.E.2d at 47. Here, the Land Use Buffer Table specifically includes an "active farm/agriculture" column, which is not labeled as either a zoning-district type or a land-use type. Moreover, the plain language of the Land Use Buffer Table, "zoning districts or uses," and the use of the term "land use" throughout UDO § 6.8.6 supports the interpretation that UDO § 6.8.6 applies to zoning districts or land uses. *See Lanvale Props., LLC*, 366 N.C. at 155, 731 S.E.2d at 810. This interpretation is further supported by the express purpose of the buffer requirement under the UDO. *See Yancey*, 268 N.C. at 266, 150 S.E.2d at 443. According to UDO § 6.8.6(A), a land use buffer is used to "buffer lower intensity *uses* from incompatible higher intensity/density land *uses*." (Emphasis added). Finally, the goals of the Comprehensive Plan emphasize the desire to preserve agricultural areas from incompatible uses as well as to recognize and support the right to farm. By specifically including zoning districts and land uses in the Land Use Buffer Table, when viewed in the context of the entire UDO and Comprehensive Plan, the intent of

6

including UDO § 6.8.6 was, in part, to establish land buffers based on zoning districts *or* land uses in an effort to protect agriculture. *See id*. at 266, 150 S.E.2d at 443. As a result, I would conclude the superior court erred by affirming the Board's incorrect interpretation that UDO § 6.8.6 solely applies to zoning districts. Hence, in my view, the superior court's interpretation of UDO § 6.8.6 was incorrect. *See MCC Outdoor, LLC*, 169 N.C. App. at 810, 610 S.E.2d at 796.

The majority correctly notes that "if the Arter Property qualifies as an 'active farm,' then a 30-foot-wide buffer would be required under section 6.8.6(D) based on land use designation." Nevertheless, UDO § 6.8.6(D) does not define an "active farm" as a land use or a zoning district. Because there exists a question of fact as to whether the Arter Property constitutes "active farm/agriculture" under the UDO, I would remand to the superior court to make a finding as to that issue.

Although I agree with the majority's conclusion that the superior court used the proper standard of review when evaluating Petitioner's issues on appeal, I disagree with the majority's holding that the superior court correctly applied de novo review in interpretating UDO § 6.8.6. After reviewing the UDO in accordance with the principles of statutory construction, in my view, UDO § 6.8.6 requires land use buffers based on the zoning districts *or* land uses of the subject and adjacent properties. Accordingly, I would reverse and remand to determine whether the Arter Property constitutes "active farm/agriculture" for the purpose of applying UDO § 6.8.6 and requiring a 30-foot-wide buffer.

7