SANDY MUSH PROPERTIES, INC., AND FLORIDA ROCK INDUSTRIES, INC., PLAINTIFFS v. RUTHERFORD COUNTY, BY AND THROUGH THE RUTHERFORD COUNTY BOARD OF COMMISSIONERS, DEFENDANT

No. COA06-68

(Filed 2 January 2007)

**1. Building Codes— office building permit—moratorium on rock quarry—tolling statutory time for resuming construction**

The trial court's entry of summary judgment for defendant county upholding a moratorium on heavy industry within 2000 feet of a public school and enjoining plaintiff landowner from operating a rock quarry on the property, and plaintiff landowner's appeal therefrom, tolled the statutory time period under which plaintiff could resume construction pursuant to a building permit for an office building to be used in conjunction with a rock quarry on the property, even though defendant county took no action based upon the moratorium to revoke the building permit, and plaintiff's building permit has not expired, because the summary judgment prohibited plaintiff from continuing construction pursuant to its building permit for a building to be used with the rock quarry. N.C.G.S. § 153A-358.

**2. Building Codes; Zoning— office building permit—vested right—no vested right for rock quarry**

Although a valid building permit for an office building on plaintiff landowner's property gave plaintiff a vested right under N.C.G.S. § 153A-344(b) to build an office building that plaintiff intended to use in conjunction with the operation of a rock quarry on the property, the building permit did not give plaintiff a statutory vested right to operate a rock quarry on the property after an ordinance prohibiting the quarry was enacted.

SANDY MUSH PROPS., INC. v. RUTHERFORD CTY.

[181 N.C. App. 224 (2007)]

Appeal by Plaintiffs and by Defendant from order entered 7 December 2005 by Judge Forrest Donald Bridges in Superior Court, Rutherford County. Heard in the Court of Appeals 23 August 2006.

*Kennedy Covington Lobdell & Hickman, L.L.P., by Roy H. Michaux, Jr. and Ann M. Anderson, for Plaintiffs.*

*Sigmon, Clark, Mackie, Hutton, Hanvey, & Ferrell, P.A., by Warren A. Hutton, Forrest A. Ferrell and Stephen L. Palmer; and Nanney, Dalton & Miller, L.L.P., by Walter H. Dalton and Elizabeth Thomas Miller, for Defendant.*

McGEE, Judge.

Sandy Mush Properties, Inc. (Sandy Mush) and Florida Rock Industries, Inc. (Florida Rock) (collectively Plaintiffs) and Rutherford County, by and through the Rutherford County Board of Commissioners (Defendant), appeal an order for summary judgment filed 7 December 2005. In its order for summary judgment, the trial court set forth the following procedural and factual history of the case, which the parties do not contest.

Sandy Mush owns a 180-acre tract of land in Rutherford County (the property), which it leased in July 2000 to Hanson Aggregates Southeast, Inc. (Hanson) for the operation of a crushed stone rock quarry. A portion of the property is within 2,000 feet of a school boundary. Hanson applied to the State for a mining permit for the property in September 2000, and the State eventually granted a mining permit to Hanson in March 2002. Hanson applied to Defendant's building department on 26 June 2001 for building permits to construct on the property a modular office building, an office building, and a metal building. Defendant's building department denied Hanson's applications.

Defendant enacted a Polluting Industries Development Ordinance (the moratorium) on 2 July 2001, which imposed a moratorium on the operation of new or expanded heavy industry within 2,000 feet of a church, school, residence or other structure. Hanson renewed its applications for building permits on 31 August 2001, after meeting the requirements that caused the initial denial of the applications. Defendant again denied Hanson's applications when Hanson refused to certify that the buildings would not be used in conjunction with a quarry on the property, which was a heavy industry prohibited by the moratorium.

Hanson filed a complaint against Defendant requesting a writ of mandamus to direct Defendant to issue the building permits and seeking an injunction to prevent Defendant from enforcing the moratorium against Hanson. The trial court ruled on 28 September 2001 that Defendant was enjoined from enforcing the moratorium and ordered Defendant to grant the building permits to Hanson. Defendant issued the building permits to Hanson on 1 October 2001. Later that day, Defendant enacted the School Zone Protective Ordinance (the ordinance), which prohibited heavy industries within 2,000 feet of a primary or secondary school property boundary in Rutherford County. Defendant enacted the ordinance after notice and publication pursuant to the North Carolina General Statutes.

Hanson commenced construction on an office building on the property in October 2001 and continued construction until 20 December 2001, at which time it ceased construction. Defendant received a request from the State regarding Hanson's application for an air quality permit for the proposed quarry, and Defendant responded that Hanson's proposed quarry violated the ordinance.

Defendant filed a motion for summary judgment and noticed it for hearing on 1 July 2002. At the hearing, Sandy Mush appeared and announced that it was willing to be substituted for Hanson and that Sandy Mush ratified all of Hanson's claims. In an assignment of rights and relinquishment of leasehold interest entered 1 July 2002, Hanson and Sandy Mush terminated Hanson's lease of the property and Hanson assigned

> all of its right, title and interest, including its grandfathered or vested rights, and in and to all permits issued to it or applied for by it, including but not limited to all building or other permits issued by Rutherford County, North Carolina, and all surface mining, water quality or air quality permits or applications issued to or filed by Hanson . . . . It is the intention to assign these rights to Sandy Mush . . . as fully and as completely as possible, to the maximum extent allowed by law.

In an order entered 8 August 2002, the trial court substituted Sandy Mush for Hanson, and Sandy Mush later moved for summary judgment. The trial court entered an order for summary judgment on 25 August 2002, dissolving the writ of mandamus, granting Defendant's motion for summary judgment, and denying Sandy Mush's motion for summary judgment.

Sandy Mush appealed to this Court and we filed an opinion on 21 October 2003. However, this Court allowed Defendant's petition for rehearing and issued an opinion, which superseded the first opinion, on 4 May 2004. In *Sandy Mush Props., Inc. v. Rutherford Cty.*, 164 N.C. App. 162, 595 S.E.2d 233 (2004), our Court held that the moratorium was invalid because the defendant Rutherford County had failed to comply with the applicable notice requirements. *Id.* at 167-68, 595 S.E.2d at 236-37. Therefore, our Court held:

> Although the [defendant] subsequently complied with those requirements before adopting the [ordinance], [the] defendant[] had already been ordered to issue Hanson a building permit because the moratorium was an invalid exercise of the [defendant's] police powers. [The] [p]laintiff, as the owner of the Property and the party properly substituted for Hanson in this action, is now therefore entitled to that permit. Accordingly, we reverse the trial court's denial of [the] plaintiff's summary judgment motion and its grant of summary judgment in favor of [the] defendant[].

*Id.* at 168, 595 S.E.2d at 237.

Sandy Mush informed Defendant on 7 July 2004 that it planned to resume construction under its building permit on 14 July 2004. Defendant notified Sandy Mush on 15 July 2004 that the building permit had expired. Plaintiffs filed a complaint for declaratory and injunctive relief on 6 August 2004. Plaintiffs alleged that Florida Rock held an option agreement and a mineral agreement and lease with regard to the property. Plaintiffs sought a declaration and an injunction allowing them to continue construction of the office building on the property, or in the alternative, an order tolling the period for the expiration of the permit pending a final decision. Plaintiffs attached a copy of the office building permit to the complaint.

The trial court entered an order on 17 August 2004, denying Plaintiffs' request to resume construction under the building permit, but ordering that "[t]he period available for ... [P]laintiffs to continue construction, if any such period has not already expired, under the October 1, [2001] permit is hereby tolled from and after July 13, 2004 pending a final decision in this cause." Plaintiffs filed an amended complaint on 8 October 2004 seeking a determination that Plaintiffs had statutory and common law vested rights to use the property for a quarry. Plaintiffs filed a motion for partial summary judgment regard-

ing the validity of the building permits and Plaintiffs' statutory vested right to use the property as a quarry.

In its summary judgment order filed 7 December 2005, the trial court found that "[b]oth parties to this action acknowledge that the issue relating to common law vested rights involves questions of fact that would require a jury trial, if that issue is necessary for disposition of the case." The trial court then made the following conclusions of law:

1. The 12-month statutory period prescribed under N.C.G.S. § 153A-358 for continuing the validity of a building permit issued on October 1, 2001 was tolled by the August 25, 2002 Summary Judgment; such period, therefore, has not expired and the building permit is valid.

2. Subsequent to the effective date of the . . . [o]rdinance, use of the property for mining and rock quarrying was no longer consistent with local zoning ordinances.

3. Notwithstanding the previous issuance of a building permit for the construction of certain buildings which were to be used ancillary to a mining and rock quarry operation on the property, the issuance of the building permit did not create a statutory vested right giving . . . Plaintiffs a right to mine and quarry the property.

The trial court granted summary judgment for Plaintiffs regarding "the validity of the building permit(s)" and summary judgment for Defendant as to the issue of a statutory vested right to use the property as a quarry. The trial court also ordered that "[a]lthough Summary Judgment is final as to fewer than all the claims addressed in . . . Plaintiffs' Complaint, there is no just reason for delay and the [Trial] Court determines that this decision is appropriate for immediate appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure." Plaintiffs and Defendant appeal.

## Defendant's Appeal

[1] Defendant argues the trial court erred by granting summary judgment for Plaintiffs regarding the validity of the building permits issued by Defendant to Hanson. Defendant argues the building permits expired when Hanson discontinued work authorized by the permits for a period of twelve months. However, Plaintiffs contend the period of time in which to resume work under the permits was tolled

during the pendency of Sandy Mush's appeal from the trial court's 25 August 2002 summary judgment order. We agree with Plaintiffs with respect to the office building permit.

On appeal of a summary judgment ruling, our Court must determine "whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law." *Allstate Ins. Co. v. Lahoud*, 167 N.C. App. 205, 207, 605 S.E.2d 180, 182 (2004), *aff'd per curiam*, 359 N.C. 628, 614 S.E.2d 304 (2005). The moving party bears the burden of showing there is no genuine issue of material fact. *Id.* We view the evidence in the light most favorable to the non-movant. *Id.*

N.C. Gen. Stat. § 153A-358 (2005) provides:

A [building] permit issued pursuant to [N.C. Gen. Stat. §] 153A-357 expires six months, or any lesser time fixed by ordinance of the county, after the date of issuance if the work authorized by the permit has not commenced. If after commencement the work is discontinued for a period of 12 months, the permit therefor immediately expires.

It is undisputed that Defendant issued building permits to Hanson on 1 October 2001 for the construction of a modular office building, an office building and a metal building and that Hanson intended to use the buildings in conjunction with a proposed quarry on the property. It is also undisputed that Hanson commenced construction on the office building on 16 October 2001 and continued construction through 20 December 2001.[1] The trial court entered summary judgment for Defendant on 25 August 2002, upholding the moratorium on heavy industry within 2,000 feet of a public school. The trial court also dissolved the writ of mandamus and preliminary injunction. (199). The parties dispute the effect of the entry of summary judgment.

Defendant argues that while the trial court's 25 August 2002 summary judgment order enjoined Plaintiffs from operating a quarry on

---

1. We note that the parties have not argued the validity of Plaintiffs' permits to construct the modular office and the metal building in that those permits expired approximately 1 April 2002 since Plaintiffs never commenced construction under those permits. *See* N.C.G.S. § 153A-358 (stating that a building permit issued pursuant to N.C. Gen. Stat. § 153A-357 "expires six months, or any lesser time fixed by ordinance of the county, after the date of issuance if the work authorized by the permit has not commenced.").

the property, it did not revoke or invalidate the building permits issued to Hanson. Defendant argues that "[t]o invalidate the permits, [Defendant] would have [had] to take additional action based on the Moratorium to revoke them. [Defendant], however, chose not to do so and instead allowed the permits to remain in full force and effect." Therefore, Defendant argues, the building permits expired approximately 20 December 2002, a year after Hanson ceased construction on the property.

Although the office building permit issued by Defendant did not authorize the construction of a quarry on the property, it is undisputed that Plaintiffs intended to use the permitted building in conjunction with a quarry. Because the trial court's summary judgment order upheld the moratorium that prohibited Plaintiffs from operating the proposed quarry, the order effectively prohibited Plaintiffs from continuing construction pursuant to their building permit. Furthermore, it would have been nonsensical for Plaintiffs to continue construction when Defendant could have prohibited construction at any time. Moreover, our Court determined in *Sandy Mush Properties, Inc.*, that Sandy Mush "is now therefore entitled to that permit." *Sandy Mush Props., Inc.*, 164 N.C. App. at 168, 595 S.E.2d at 237. That holding demonstrated that Plaintiffs had previously been precluded from continuing construction under their building permit and, therefore, the statutory time period for resumption of construction had been tolled pending Sandy Mush's appeal from the 25 August 2002 summary judgment order. Therefore, we conclude that the trial court's 25 August 2002 summary judgment order tolled the time period for resumption of construction under Plaintiffs' office building permit pursuant to N.C.G.S. § 153A-358.

Defendant relies on *Estates, Inc. v. Town of Chapel Hill*, 130 N.C. App. 664, 504 S.E.2d 296 (1998), *disc. review denied*, 350 N.C. 93, 527 S.E.2d 665 (1999). In *Estates, Inc.*, the petitioner Estates, Inc. contracted to purchase a 34-acre tract of real property from the petitioner Timberlyne Investment Co., LLC. *Id.* at 665, 504 S.E.2d at 297-98. Because Estates, Inc. wanted to build a "Planned Development for Housing" on the land, it was required to obtain a special use permit from the Chapel Hill Town Council (the Town Council). *Id.* at 665, 504 S.E.2d at 298.

The petitioners applied for a special use permit and the Town Council denied the application. *Id.* The petitioners filed a petition for certiorari with the trial court. *Id.* Several property owners in the

vicinity of the proposed development filed a motion to intervene, which the trial court granted. *Id.* The trial court reversed the decision of the Town Council and directed the Town Council to approve the petitioners' application and issue the permit. *Id.* Pursuant to the trial court's mandate, the Town Council issued the special use permit to the petitioners. *Id.*

The intervenors appealed the decision of the trial court and the petitioners moved to dismiss the appeal. *Id.* In support of their motion, the petitioners argued "that because [the] intervenors did not act to prevent the Town Council from issuing the permit in compliance with the [trial] court's mandate, the questions raised in [the] intervenors' appeal [were] moot." *Id.* at 666, 504 S.E.2d at 298.

Our Court cited Rule 62(a) of the North Carolina Rules of Civil Procedure, which provides:

> "Except as otherwise stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of the time provided in the controlling statute or rule of appellate procedure for giving notice of appeal from the judgment. Unless otherwise ordered by the court, an interlocutory or final judgment in an action for an injunction or in a receivership action shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal."

*Id.* at 666-67, 504 S.E.2d at 298-99 (quoting N.C.R. Civ. P. 62(a)). Our Court held that because the trial court sat as an appellate court, the trial court's "order to the Town Council to grant the special use permit was an appellate court's mandate to a lower tribunal, not an injunction." *Id.* at 667, 504 S.E.2d at 299. Therefore, "an automatic stay against proceedings to enforce the [trial] court's mandate arose when the order was entered on 15 May 1997. The stay lasted until the time to file notice of appeal expired on 16 June 1997." *Id.* at 667-68, 504 S.E.2d at 299. However, the stay did not prohibit the Town Council from complying with the order voluntarily, which the Town Council did. *Id.* at 668, 504 S.E.2d at 299. Our Court recognized that

> [a] reversal of the [trial] court's ruling by this Court would have the limited effect of affirming the [Town] Council's initial denial of [the] petitioners' request for a special use permit. It would do nothing to invalidate the permit later issued voluntarily by the [Town] Council pursuant to the [trial] court's mandate.

*Id.* at 668, 504 S.E.2d at 300. Because the relief sought by the intervenors could no longer be granted, our Court held that "[t]he issues raised in [the] intervenor[s'] appeal are . . . moot, and we will not address them." *Id.* at 669, 504 S.E.2d at 300.

In the present case, Defendant argues that its

> decision not to revoke the permits issued to Hanson is as equally a voluntary action as the Town of Chapel Hill's issuance of a special use permit prior to being compelled to do so [in *Estates, Inc.*]. . . . By choosing not to revoke the permits previously mandated by the court, [Defendant in the present case] adopted the issuance of the permits as its own volitional act.

Therefore, "the reversal of the August 25, 2002 Summary Judgment had no effect on the permits issued by [Defendant]."

However, *Estates, Inc.* is inapplicable to the present case. *Estates, Inc.* involved the issue of mootness. The intervenors were appealing the reversal of the Town Council's decision to deny the special use permit when the permit had already been issued voluntarily by the Town Council. *Estates, Inc.*, 130 N.C. App. at 668-69, 504 S.E.2d at 299-300. In the present case, the issue is whether the 25 August 2002 summary judgment order, and the appeal therefrom, tolled the operation of N.C.G.S. § 153A-358. Accordingly, *Estates, Inc.* has no application to the present case.

We conclude the trial court's 25 August 2002 summary judgment order, and Sandy Mush's appeal therefrom, tolled the statutory time period in which Plaintiffs could resume construction under their office building permit. Therefore, we affirm the trial court's grant of summary judgment for Plaintiffs on this issue to the extent the trial court ruled that the office building permit had not expired.

## Plaintiffs' Appeal

[2] Plaintiffs argue the trial court erred by granting summary judgment for Defendant on the issue of a statutory vested right for the operation of a quarry on the property. Plaintiffs contend that pursuant to N.C. Gen. Stat. § 153A-344(b), they acquired a statutory vested right to mine the property by virtue of the building permits issued to Hanson by Defendant. Plaintiffs further argue that their vested right was unaffected by the subsequent enactment of the ordinance.

N.C. Gen. Stat. § 153A-344(b) (2003) establishes a statutory vested right for certain buildings and uses as follows:

**SANDY MUSH PROPS., INC. v. RUTHERFORD CTY.**

[181 N.C. App. 224 (2007)]

Amendments, modifications, supplements, repeal or other changes in zoning regulations and restrictions and zone boundaries shall not be applicable or enforceable without consent of the owner with regard to buildings and uses for which either (i) building permits have been issued pursuant to G.S. 153A-357 prior to the enactment of the ordinance making the change or changes so long as the permits remain valid and unexpired pursuant to G.S. 153A-358 and unrevoked pursuant to G.S. 153A-362 or (ii) a vested right has been established pursuant to G.S. 153A-344.1 and such vested right remains valid and unexpired pursuant to G.S. 153A-344.1.

While Plaintiffs cite the current version of N.C.G.S. § 153A-344(b), which no longer contains the words "modifications, supplements, repeal or other changes[,]" this statutory change was not effective until 1 January 2006. Therefore, the earlier version of the statute, as cited above, applies.

We must apply the plain language of the statute to determine whether Plaintiffs are entitled to a statutory vested right to mine the property. In the present case, as stated above, the only building permit that remains valid is the office building permit and it is the only permit that could give rise to a vested right to mine the property.

Because the statute provides a statutory vested right "with regard to *buildings* . . . for which . . . building permits have been issued[,]" N.C.G.S. § 153A-344(b) (emphasis added), and the office building permit was issued before enactment of the ordinance, we hold that Plaintiffs obtained a statutory vested right to the office building. Plaintiffs argue further, however, that they are entitled to a statutory vested right to mine the property by virtue of that permit. We disagree. While the statute also provides a statutory vested right "with regard to . . . *uses* for which . . . building permits have been issued[,]" N.C.G.S. § 153A-344(b) (emphasis added), the office building permit was not issued to authorize the use of the property as a quarry. Rather, the building permit only authorized the construction of the office building. The proposed use of the office building, as stated in the building permit, was "NOOB, OFFICE, BANKS & PROFESSION."

Plaintiffs cite *Simpson v. City of Charlotte*, 115 N.C. App. 51, 443 S.E.2d 772 (1994), in which the City of Charlotte's zoning ordinance "allowed a quarry to be established in any zoning district, including residential districts, subject to certain requirements." *Id.* at 53, 443 S.E.2d at 774. The respondent filed an application for a permit for the

construction and operation of a quarry on land zoned light industrial, general industrial, and multi-family. *Id.* Charlotte's zoning administrator issued a quarry permit to the respondent. *Id.* The Charlotte City Council later approved an amendment to the City's zoning ordinance, which limited quarries to general industrial districts. *Id.*

The petitioner, an owner of multi-family and industrial-zoned real property in the vicinity of the respondent's proposed quarry, appealed the zoning administrator's decision to the Zoning Board of Adjustment (the Board). *Id.* The Board concluded that the zoning administrator had properly granted the permit to the respondent under the pre-amendment zoning ordinance. *Id.* The Board also concluded that the permit issued to the respondent was a building permit and that by virtue of the permit, the respondent had obtained a statutory vested right to the quarry permit pursuant to N.C. Gen. Stat. § 160A-385(b). *Id.* at 56-57, 443 S.E.2d at 776.

The petitioner filed a petition for writ of certiorari with the trial court and the trial court concluded that the respondent had complied with the City's pre-amendment zoning ordinance and that the permit was properly issued. *Id.* at 53, 443 S.E.2d at 774. The trial court also affirmed the Board's conclusion that the respondent had obtained a statutory vested right to the quarry permit. *Id.* at 57, 443 S.E.2d at 776. However, the trial court determined that the pre-amendment zoning ordinance violated a statute that required zoning regulations to promote the " 'health, safety, morals, or the general welfare of the community[,]' " and therefore ruled that the permit was null and void. *Id.* at 53, 443 S.E.2d at 774 (quoting N.C. Gen. Stat. § 160A-381 (1987)).

The respondent appealed and the petitioner cross-appealed the trial court's holding that the respondent had a vested right to the quarry permit. *Id.* Our Court held the trial court erred by concluding that the permit issued to the respondent was null and void because the validity of the zoning ordinance had not been before the trial court. *Id.* at 55, 443 S.E.2d at 775. Regarding the petitioner's cross-appeal, the petitioner assigned error to the trial court's conclusion that the respondent had a statutory vested right to the quarry permit. *Id.* The petitioner argued that "after [the] amendment was adopted by the City Council, [the] respondent's permit allowing the operation of a quarry in a residential district was no longer valid." *Id.*

Our Court interpreted N.C. Gen. Stat. § 160A-385(b), which applies to municipalities and is the identical counterpart to N.C.G.S.

§ 153A-344(b), which is applicable to counties. Our Court quoted N.C. Gen. Stat. § 160A-385(b) as follows:

> "Amendments, modifications, supplements, repeal or other changes in zoning regulations and restrictions and zone boundaries shall not be applicable or enforceable without consent of the owner with regard to buildings and uses for which either (i) building permits have been issued pursuant to G.S. 160A-417 prior to the enactment of the ordinance making the change or changes so long as the permits remain valid and unexpired pursuant to G.S. 160A-418 and unrevoked pursuant to G.S. 160A-422 or (ii) a vested right has been established pursuant to G.S. 160A-385.1 and such vested right remains valid and unexpired pursuant to G.S. 160A-385.1."

*Id.* at 56, 443 S.E.2d at 776 (quoting N.C. Gen. Stat. § 160A-385(b) (Cum. Supp. 1993)).

Our Court recognized that N.C. Gen. Stat. § 160A-417(a) required a building permit to contain a provision that the " 'work done shall comply with the State Building Code and all other applicable State and local laws.' " *Id.* at 57, 443 S.E.2d at 776 (quoting N.C. Gen. Stat. § 160A-417(a) (Cum. Supp. 1993)). The respondent's permit, however, did not contain such a provision and, also, the zoning administrator referred to the permit as a zoning permit in the notice sent to adjoining property owners. *Id.* Therefore, our Court held that the permit issued to the respondent was not a building permit, and the respondent therefore did not obtain a statutory vested right to operate a quarry under N.C.G.S. § 160A-385(b). *Id.*

In the present case, the office building permit obtained by Hanson did contain the provision that "all work will comply with the State Building Code and all other applicable State and Local laws and ordinances and regulations." Therefore, the office building permit in the present case complied with N.C. Gen. Stat. § 153A-357 (2005), which requires such a provision to be included in building permits issued by counties. Although Defendant argues the permit expired, Defendant does not otherwise contest the validity of the building permit. Therefore, unlike in *Simpson*, the permit in the present case was a valid building permit as defined by N.C.G.S. § 153A-357.

However, simply because the permit at issue in the present case was a building permit, unlike in *Simpson*, does not mandate the conclusion that Plaintiffs obtained a statutory vested right to mine the

property by virtue of that permit. *Simpson* was limited to a determination that the quarry permit issued in that case did not qualify as a building permit. *Simpson* did not deal with any other requirements for the establishment of a statutory vested right, as we do here. In the present case, the office building permit was issued to authorize the construction of a building on the property, not to authorize the use of the property as a quarry. Therefore, *Simpson* is inapplicable to the present case. We affirm the trial court on this issue.

Affirmed.

Judges BRYANT and ELMORE concur.