IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-382

No. COA21-220

Filed 7 June 2022

Union County, No. 19CVS1912

WILLIE THOMPSON AND EARLENE THOMPSON, Petitioners,

v.

UNION COUNTY, Respondent.

Appeal by petitioners from orders entered 9 November 2020 by Judge Hunt Gwyn in Superior Court, Union County. Heard in the Court of Appeals 16 November 2021.

*Ferguson Chambers & Sumter, PA, by Geraldine Sumter, for petitioners-appellants.*

*Perry, Bundy, Plyler & Long, LLP, by Ashley J. McBride, for respondent-appellee.*

STROUD, Chief Judge.

¶ 1 Willie and Earlene Thompson ("Appellants") appeal from a Superior Court order affirming a decision by the Union County Board of Adjustment ("BOA") which upheld zoning Notices of Violation and a fine issued to Appellants by Union County. Appellants argue (1) the Superior Court erred in failing to make findings of fact and conclusions of law in compliance with North Carolina Rule of Civil Procedure 52(a)(1); (2) erred by retroactively applying the 2014 Union County Unified Development

Ordinance ("2014 UDO") to a property constructed prior to enactment of the 2014 UDO; (3) the County's enforcement actions are barred by statutes of limitations in accordance with North Carolina General Statutes §§ 1-49(3) and 1-51(5); and (4) the Superior Court erred by affirming a decision by the BOA without sufficient findings of fact and conclusions of law. Because Appellants' residence is presumed lawful if it was in compliance with the ordinance in effect at the time of construction and any applicable issued permits, and because the prior ordinance applicable to the residence and garage was not in evidence, Union County failed to show the structures are in violation of the 2014 UDO. The BOA and Superior Court therefore erred in holding Appellants' property in violation of the 2014 UDO. For these reasons, the Superior Court's order is reversed in part and vacated and remanded in part.

## I. Background

¶ 2 Appellants purchased a residence with two detached garages located behind the house in Indian Trail, Union County on 20 June 2018. The property is accessed by a 60-foot private right-of-way which connects to Stinson Hartis Road, a public street. At issue in this case are the single-family residence and the larger of the two detached garages.

¶ 3 The property was developed between 2004 and 2009. The residence was built in 2004, and the larger garage was later constructed in 2009. The property was sold to Appellants' immediate predecessor in interest in 2013. For purposes of this appeal,

we assume a permit was issued for construction of the residence in 2004. At the BOA hearing, James King, Union County Zoning Administrator, acknowledged as to the residence that

> we cannot verify whether or not a permit was issued because we purge our records after 6 years . . . . It has been destroyed, so we don't know if there's a permit or not. We're going to assume for the benefit of the resident that the permit was issued and we're just going to go with that.

As to the large garage, Appellant Earlene testified that the garage was built without a permit and presented a 3 May 2018 application for a building permit to the BOA. The BOA made no findings as to the existence of a permit for either structure. As noted by the Zoning Administrator, Union County maintains a policy of purging permitting records after six years, and copies of the permits and applications no longer exist.

¶ 4        Years after the construction of the residence and garages, on 6 October 2014, Union County enacted the UDO which contains minimum setback requirements. Under the UDO, the Appellants' property is zoned "R-20," allowing for single-family residential development. The minimum setback requirements for property zoned R-20 under the UDO require a home or structure to be set back at least 20 feet from side property lines or rights-of-way, commonly called street side yard setbacks.

¶ 5        The property was later listed for sale, and on 2 January 2018 the property was surveyed in connection with a potential purchase. According to the survey, based

upon the 2014 UDO the larger of the two garages encroached upon the private right-of-way and was in violation of the UDO 20-foot setback requirement. This survey also showed the residence was in violation of the same 2014 UDO 20-foot street side yard setback, although the survey did not identify the exact extent of the encroachment.

¶ 6         In April 2018, the survey was presented to Mr. King. On 1 June 2018, after reviewing the survey, Mr. King issued a Notice of Violation to Appellants' predecessor in interest, noting that a "portion of both the principal structure and one of the accessory structures encroach into the required street side yard setback." The property was left on the market for sale, and the Multiple Listing Service (MLS) listing for the property noted "133K BELOW APPRAISED VALUE, SEE APPRAISAL. CASH OFFERS ONLY-HOUSE IS ENCROACHING ON PRIVATE DRIVE BESIDE HOUSE. Being sold AS IS, NO REPAIRS." Appellants purchased the home 20 June 2018. They also received a $10,000 credit from seller at closing because of the encroachment violation.

¶ 7         After Appellants purchased the property, the Union County Zoning Administrator issued a Notice of Violation to them on 6 September 2018. This Notice called for an additional survey to determine the extent of the violation by the residence and noted the setback violation as "the accessory structures encroaches [sic] into the required street side yard setback and there is a potential encroachment with

a portion of the principal structure as well." This Notice also required removal of any portion of a structure violating the setback requirement. Appellants were subsequently fined $50 for the setback violation on 3 October 2018; this citation again noted violations by both structures, called for a new survey, and required removal of any portions of the structures that violated the UDO setback requirements. Another Notice of Violation was issued 31 January 2019, referencing the 2 January 2018 survey and again stating both the garage and residence were in violation of the minimum setback requirements.

¶ 8    Appellants appealed the Notices of Violation and the fine to the Union County Board of Adjustment. Hearings were held for the appeal on 11 February 2019 and 13 May 2019. Both parties presented testimony and evidence. The Board of Adjustment affirmed the Notices and determined that the residence and larger garage were encroaching into the street side yard setback in violation of the UDO.

¶ 9    Appellants petitioned for Writ of Certiorari to the Superior Court of Union County and requested the Court reverse and vacate the BOA's decision. The Superior Court entered an Order 9 November 2020 affirming the Union County BOA's decision. Appellants timely appealed to this Court.

## II.    Standard of Review

¶ 10    In this case, the Superior Court sat as an appellate court, reviewing the BOA's decision on a writ of certiorari. *See Dellinger v. Lincoln County*, 248 N.C. App. 317,

322, 789 S.E.2d 21, 26 (2016).  At the time of the BOA decision and Superior Court proceeding, former North Carolina General Statute § 160A-388 provided that "[e]very quasi-judicial decision shall be subject to review by the superior court by proceedings in the nature of certiorari pursuant to G.S. 160A-393."  N.C. Gen. Stat. § 160A-388(e2)(2) (2019) (repealed by S.L. 2019-111, § 2.3 as amended by S.L. 2020-25, §51(b), eff. June 19, 2020) (recodified at N.C. Gen. Stat. § 160D-406(k) (2021)); *see also Four Seasons Management Services v. Town of Wrightsville Beach*, 205 N.C. App. 65, 75, 695 S.E.2d 456, 462 (2010).  The Superior Court's functions when reviewing the decision of a board sitting as a quasi-judicial body include:

> (1) Reviewing the record for errors in law,
>
> (2) Insuring that procedures specified by law in both statute and ordinance are followed,
>
> (3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,
>
> (4) Insuring that decisions of [the Board] are supported by competent, material and substantial evidence in the whole record, and
>
> (5) Insuring that decisions are not arbitrary and capricious.

*Dellinger*, 248 N.C. App. at 322, 789 S.E.2d at 26 (citation omitted).  This Court's review of the Superior Court is limited to determining whether the Superior Court exercised the appropriate standard of review, and whether that standard of review

was correctly applied. *See Overton v. Camden County*, 155 N.C. App. 391, 393–94, 574 S.E.2d 157, 160 (2002); *Appeal of Willis*, 129 N.C. App. 499, 501–02, 500 S.E.2d 723, 726 (1998).

¶ 11        When reviewing administrative decisions, determining the appropriate standard of review to be applied depends on "the substantive nature of each assignment of error." *Morris Communications Corp. v. City of Bessemer City Zoning Bd. of Adjustment*, 365 N.C. 152, 155, 712 S.E.2d 868, 870 (2011) (quoting *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004)). When the assignment of error alleges an error of law, *de novo* review is appropriate. *Dellinger*, 248 N.C. App. at 323, 789 S.E.2d at 26. Under a *de novo* standard of review, "a reviewing court considers the case anew and may freely substitute its own interpretation of an ordinance for a board of adjustment's conclusions of law." *Morris Communications Corp.*, 365 N.C. at 156, 712 S.E.2d at 871. The court shall consider the interpretation of the decision-making board but is not bound by that interpretation and may freely substitute its judgment as appropriate. *Id.*

¶ 12        When the assignment of error alleges that a board's decision was not supported by evidence, or was arbitrary and capricious, the appropriate review is the whole record test. *Amanini v. North Carolina Dept. of Human Resources, N.C. Special Care Center*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). "The 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record')

in order to determine whether the agency decision is supported by 'substantial evidence.'" *Id.* "'Substantial evidence' is that which a reasonable mind would consider sufficient to support a particular conclusion . . . ." *Id.* at 682, 443 S.E.2d at 122.

¶ 13        "[W]hether competent, material and substantial evidence is present in the record is a conclusion of law." *Dellinger*, 248 N.C. App. at 324–25, 789 S.E.2d at 27 (alteration in original) (quoting *Clark v. City of Asheboro*, 136 N.C. App. 114, 119, 524 S.E.2d 46, 50 (1999)).   The initial issue of whether the evidence presented by Appellants met the requirements of being competent, material, and substantial is subject to *de novo* review, but the BOA's ultimate decision about how to weigh that evidence is subject to whole record review.   *Id.* at 325, 789 S.E.2d at 27.   "The reviewing court should not replace the [BOA's] judgment as between two reasonably conflicting views; while the record may contain evidence contrary to the findings of the agency, this Court may not substitute its judgment for that of the agency." *SBA, Inc. v. City of Asheville City Council*, 141 N.C. App. 19, 27, 539 S.E.2d 18, 22 (2000) (quotation, citations, and alterations in original omitted).   In reviewing the sufficiency and competency of evidence before the Superior Court, the question is not whether the evidence supported the Superior Court's order. *Dellinger,* 248 N.C. App. at 323, 789 S.E.2d at 26.   The question is whether the evidence before the BOA was supportive of the BOA's decision. *Id.*

### III.   Analysis

**A. The Superior Court's Application of Standards of Review**

¶ 14    This Court's first task is determining whether the Superior Court applied the correct standards of review. *See Overton*, 155 N.C. App. at 393–94, 574 S.E.2d at 160. It appears that the Superior Court correctly identified *de novo* review and the whole record test as the appropriate standards to apply. The Superior Court reviewed the decision to determine whether there was "substantial, admissible evidence in the record to support the findings of fact set forth in the Decision," and conducted a *de novo* review of the decision to determine whether the conclusions of law were supported by the findings of fact. The Superior Court also reviewed the BOA decision *de novo* to determine whether the decision was affected by other errors of law.

¶ 15    Before moving on to this Court's second task, reviewing the Superior Court's application of these standards, we note Appellants allege that the Superior Court's order does not comply with our Rules of Civil Procedure.

### 1. *Application of North Carolina Rule of Civil Procedure 52 to the Superior Court's Order*

¶ 16    Appellants' first argument asserts the Superior Court erred in failing to issue an order with findings of fact in compliance with North Carolina Rule of Civil Procedure 52(a)(1). We disagree. Rule 52(a)(1) has no application in the present case.

¶ 17    North Carolina Rule of Civil Procedure 52(a)(1) states, in relevant part, "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall

find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2019). But this Court has repeatedly held that a superior court, when sitting as an appellate court, is not required to "make findings of fact and enter a judgment thereon in the same manner as the court would be when acting in its role as trial court." *Shepherd v. Consolidated Judicial Retirement System*, 89 N.C. App. 560, 562, 366 S.E.2d 604, 605 (1988) (citing *Markham v. Swails*, 29 N.C. App. 205, 208, 223 S.E.2d 920, 922 (1976) (discussing the application of Rule 52 to a trial court's appellate review of agency decisions in accordance with North Carolina General Statutes §§ 143-314, 315)). "The trial court, when sitting as an appellate court to review an administrative agency's decision, must [only] set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." *Sutton v. North Carolina Dept. of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 342 (1999). Separate findings of fact are not required, and Rule 52 has no application where the superior court sits in the posture of an appellate court. *See Myers Park Homeowners Ass'n, Inc. v. City of Charlotte*, 229 N.C. App. 204, 214, 747 S.E.2d 338, 346 (2013) (citing *Markham*, 29 N.C. App. at 208, 233 S.E.2d at 922).

¶ 18        The Superior Court is not the trier of fact; that is the function of the town board. *Coastal Ready-Mix Concrete Co., Inc. v. Board of Com'rs of Town of Nags Head*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980). The Superior Court "may affirm

the decision, reverse the decision and remand the case with appropriate instructions, or remand the case for further proceedings." *Hampton v. Cumberland County*, 256 N.C. App. 656, 662, 808 S.E.2d 763, 768 (2017) (quoting N.C. Gen. Stat. § 160A-393(*l*) (repealed by S.L. 2019-111, § 2.3 as amended by S.L. 2020-25, §51(b), eff. June 19, 2020) (recodified at N.C. Gen. Stat. § 160D-1402(k) (2021)); *see also id.* at 671, 808 S.E.2d at 773 (summarizing *Myers Park Homeowners Ass'n* as interpreting North Carolina General Statute § 160A-393 and "affirming a superior court's denial, in a *de novo* review of a board of adjustment's order interpreting a zoning ordinance, of motions requesting additional findings of fact under Rule[] 52 . . . on the basis that 'the superior court functions as an appellate court rather than a trier of fact'" (quoting *Myers Park Homeowners Ass'n*, 229 N.C. App. at 214, 747 S.E.2d at 341 (alterations from internal quotation omitted))). This Court has even held that a superior court may err by making its own findings of fact after a *de novo* review of an agency decision. *See Hampton*, 256 N.C. App. at 668, 808 S.E.2d at 772; *Carroll*, 358 N.C. at 660–61, 599 S.E.2d at 895.

¶ 19   Because the Superior Court's order is sufficient to allow this Court to identify the scope and standards of review applied by the court below, and findings of fact according to Rule 52 are not required when the Superior Court sits as an appellate court, Appellants' argument is overruled.

**B. Application of Standards of Review by the Superior Court**

¶ 20        This Court's second task is determining if the Superior Court correctly applied the appropriate standards of review. *See Overton*, 155 N.C. App. at 393–94, 574 S.E.2d at 160. This Court reviews alleged errors of law *de novo*. *See Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 140 N.C. App. 99, 102–03, 535 S.E.2d 415, 417 (2000).

¶ 21        Appellants contend the Superior Court did not apply the standard of review properly because (1) the 2014 UDO is unenforceable against Appellants' property, and (2) the UDO should not have been applied to the property because the statutes of limitations in North Carolina General Statutes §§ 1-49(3) and 1-51(5) both prohibit the assessment of the civil penalty and the issuance of the Notices of Violation. Because Appellants failed to raise the statute of limitations defense before the Board of Adjustment and first raised the defense in their Petition for Writ of Certiorari before the Superior Court, while the court sat as an appellate court, this defense was waived. N.C. Gen. Stat. § 1A-1, Rule 8(c); *Gragg v. W.M. Harris & Son*, 54 N.C. App. 607, 609, 284 S.E.2d 183, 185 (1981) ("[T]he statute of limitations is a technical defense, and must be timely pleaded or it is deemed waived."); *Delp v. Delp*, 53 N.C. App. 72, 76, 280 S.E.2d 27, 30 (1981) ("Where a defendant does not raise an affirmative defense in his pleadings or [before the BOA], he cannot present it on appeal."). We therefore only address Appellants' arguments that their property was

exempted from the 2014 UDO or the 2014 UDO was otherwise inapplicable to the Appellants' property.

¶ 22        Appellants assert the Superior Court's decision was erroneous because Appellants' residence and garage predate the enactment of the 2014 UDO. The residence was constructed in 2004, the garage in 2009, and the 2014 UDO did not become effective until 6 October 2014. The County did not issue a citation under the 2014 UDO to the Appellants until September 2018. Appellants identify three errors of law and bases for reversal of the lower court's decision: (1) their property was exempted from enforcement by the plain language of the 2014 UDO, (2) Appellants have a vested right under North Carolina General Statute § 153A-344 to maintain their structures where currently located, and (3) it was error to affirm the retroactive application of the UDO to Appellants' property.

## 1. *Application of the 2014 UDO under UDO § 1.120-A(1) and UDO § 1.120-B*

¶ 23        Appellants challenge several of the BOA's findings of fact, but before we address the findings, we must first determine the ordinances applicable to analysis of the issues on appeal. The interpretation of an ordinance is reviewed *de novo*. *See Westminster Homes*, 140 N.C. App. at 102–03, 535 S.E.2d at 417.

¶ 24        The residence and garage on the property were constructed prior to the adoption of the 2014 UDO, and the land use ordinance in effect prior to 2014 is not in

the record. Appellants argue the plain language of the 2014 UDO exempts their property from enforcement under Section 1.120-A(1), but this Section is also not in the record and we cannot take notice of municipal ordinances not in the record. *High Point Surplus Co. v. Pleasants,* 263 N.C. 587, 591, 139 S.E.2d 892, 895 (1965); *Fulghum v. Town of Selma,* 238 N.C. 100, 105, 76 S.E.2d 368, 371 (1953) ("We cannot take judicial notice of municipal ordinances."). Appellants quote Section 1.120-A(1) to us in their brief as:

> Any building, development or structure for which a building permit was issued . . . before the effective date specified in Section 1.030 may be completed in comformance [sic] with the issued building permit . . . even if such building, development or structure does not comply with the provisions of this ordinance.

(Alterations in original.)

¶ 25 Appellants contend a permit was issued for construction of the residence and garages prior to "the effective date specified in Section 1.030," 6 October 2014, and the structures were "completed in comformance [sic] with the issued building permit . . . ." Thus, even if the residence and garages do not comply with the setback provisions of the 2014 UDO, they comply with this provision of the 2014 UDO and are not in violation of the ordinance. Appellee contends the purported Section 1.120-A(1) applies only to the narrow scenario in which a permit was issued prior to enactment of the ordinance, but construction was incomplete or had not started by

the time of enactment. Appellee contends Section 1.120-A(1) does not apply to this case because the structures were both completed long before the effective date of the 2014 UDO.

¶ 26     Appellee instead argues that Section 1.120-B, entitled "Violations Continue," is applicable to Appellant's structures and cites Section 1.120-B to us as: "[A]ny violation of the previous land use ordinance will continue to be a violation under this ordinance and be subject to penalties and enforcement under Article 95." Appellee asserts the setbacks in the prior land use ordinance are the same as the 2014 UDO, and therefore the encroachment by the garage and the residence are both continuing violations. Additionally, because the garage encroaches on not only the setback, but the right-of-way, regardless of the setback distance under the previous land use ordinance the garage is a continuing violation punishable under the 2014 UDO. Appellee contends neither structure could have been constructed "in conformance with [an] issued building permit" as asserted by Appellants. However, the actual permits, if any, no longer exist since Appellee purged its records. Additionally, Appellee's argument suffers the same fatal flaw as the Appellants' argument, since Section 1.120-B is not in the record before us and we cannot take notice of it. *High Point Surplus Co.,* 263 N.C. at 591, 139 S.E.2d at 895; *Fulghum,* 238 N.C. at 105, 76 S.E.2d at 371.

¶ 27 For purposes of appellate review, we must consider only the evidence and ordinances in the record. *High Point Surplus Co.,* 263 N.C. at 591, 139 S.E.2d at 895; *Fulghum,* 238 N.C. at 105, 76 S.E.2d at 371. The burden of proof to show the existence of a violation of the ordinance is upon the Appellee. *See Shearl v. Town of Highlands*, 236 N.C. App. 113, 116–17, 762 S.E.2d 877, 881 (2014) ("As to the first question, the burden of proving the existence of an operation in violation of the local zoning ordinance is on Respondent. Thus, it was Respondent's responsibility to present evidence that Petitioner's commercial use of his storage building was in violation of Respondent's zoning ordinance when the notice of violation was issued on 19 August 2009." (citation omitted)).

> Ordinarily, once a town meets its burden to establish the existence of a current zoning violation, the burden of proof shifts to the landowner to establish the existence of a legal nonconforming use or other affirmative defense. *See City of Winston–Salem* [*v. Hoots Concrete Co., Inc.*], 47 N.C. App. [405,] 414, 267 S.E.2d [569,] 575 [(1980)] ("The defendant, of course, has the burden of establishing all affirmative defenses, whether they relate to the whole case or only to certain issues in the case. As to such defenses, he is the actor and has the laboring oar. The city had the burden of proving the existence of an operation in violation of its zoning ordinance. It was defendant's burden to prove the city had already made a determination that the operation was permissible and did not violate the zoning ordinance." (internal quotation marks and citation omitted)). Here, however, Respondent has seriously handicapped Petitioner's ability to prove the location of the zoning line in 1993 because Respondent has lost the Official Zoning Map adopted with the 1990 zoning ordinance.

*Shearl*, 236 N.C. App. at 118, 762 S.E.2d at 882.

¶ 28        The plain language of Section 1.120-A(1) and Section 1.120-B as quoted to us appears to support Appellee's argument that Section 1.120-B applies to this situation, since the residence and garage were completed long before adoption of the 2014 UDO. But Appellee failed to carry its burden of proving the residence and garage were in violation of the ordinance in effect when they were built since they produced neither the permits nor the applicable ordinance from the time of the construction. Additionally, Section 1.120-B is not in the record, and we cannot determine whether Section 1.120-B is applicable and whether Appellants' property is a continuing violation under the 2014 UDO. Appellee's argument that the residence and garage are in violation of Section 1.120-B is based upon assumptions unsupported by the record. Appellee's arguments as to Section 1.120-B are based upon its representations as to the provisions of the ordinance in effect at the time Appellants' residence and garages were built, but that ordinance is not in our record and was not presented to the Superior Court either; our record includes only the portion of the 2014 UDO providing for setbacks in residential districts. In addition, Appellee acknowledged it had purged the records of the permits and thus has no evidence of the permits or any specific requirements of the permits.

¶ 29        Appellee asks us to assume the residence was not constructed in compliance with its permit and both structures were in violation of the prior land use ordinance when constructed in 2004 and 2009 and thus are continuing violations under Section 1.120-B, but there is no legal or evidentiary basis for this assumption. In *Shearl*, this Court addressed a similar situation where the Town had lost the zoning maps which would purportedly show the location of a zoning line at issue in that case. 236 N.C. App. at 118, 762 S.E.2d at 882. The *Shearl* Court noted, "Respondent has seriously handicapped Petitioner's ability to prove the location of the zoning line in 1993 because Respondent has lost the Official Zoning Map adopted with the 1990 zoning ordinance." *Id.* The Court also noted that the parties conceded some of the relevant maps and other evidence were not in the record, but this deficiency was not the fault of the appellant in that case. *Id.* at 117, 762 S.E.2d at 881. The case was remanded for further proceedings where all the relevant maps and evidence could be considered, with the burden upon the Town to prove the zoning violation.

> We believe that where, as here, a town fails to comply with its obligations under local ordinances and state law by failing to keep official zoning maps on record for public inspection, the appropriate remedy is to place the burden back on the town to establish the location and classification of zoning districts when the landowner began his or her nonconforming use. Because the BOA placed the burden on Petitioner to establish the location of the zoning line when he began his nonconforming use in 1993, the Superior Court's order affirming that allocation of proof must be vacated and the matter remanded for a new

> hearing. At the new hearing, Respondent must: (1) present
> evidence establishing the existence of a current zoning
> violation, and (2) present evidence that the 1990 zoning
> ordinance moved the zoning line on the subject property
> from 230 feet to 150 feet from the centerline of Highway 28.
> Petitioner must be allowed to offer additional evidence in
> rebuttal.

*Id.* at 119, 762 S.E.2d at 882.

¶ 30        As in *Shearl*, Appellee failed to carry its burden of proving a violation of the

ordinance in effect at the time the residence and garage were constructed because it

failed to present evidence of the permits (or lack thereof) and the applicable ordinance

at the time of construction. With no evidence of terms of the permits or of the

ordinance in effect when the residence and garage were constructed, the BOA and

Superior Court had no factual or legal basis upon which to find that the structures

were not in compliance with any permits and applicable provisions of the ordinance

in effect when the structures were built. There is no dispute the structures were all

completed long before adoption of the 2014 UDO and the first Notice of Violation was

not issued until 1 June 2018.

¶ 31        We must thus consider whether remand is proper in this case. In *Shearl*, the

parties conceded that certain maps and evidence were missing from the record, but

this Court determined the deficiency was not the fault of the appellant. *Id.* at 117,

762 S.E.2d at 881. In addition, in *Shearl*, the town had "lost" the maps, apparently

inadvertently, *id.* at 118, 762 S.E.2d at 882, but here the Appellee had intentionally purged its records of permits more than 6 years old. Because the issue was the lack of information in the record, the *Shearl* Court remanded for a new hearing. Here, Appellee conceded it had purged its records of permits and permit applications more than 6 years old and presumed that a permit was issued for the residence, so remand for further consideration as to the residence would be futile. As to the residence, we will not hold Appellee's unilateral decision to purge its records as to permits after 6 years against the Appellants. Appellee had the burden of proving Appellants were in violation of the 2014 UDO but did not produce evidence of any applicable permits issued for the residence and did not provide the ordinance in effect at the time of the residence's construction to the Superior Court.

¶ 32        As to the garage, Appellants acknowledged it was constructed without a permit, so the garage could potentially be in violation under Section 1.120-B. But Section 1.120-B is not in the record before us and the BOA failed to make findings of fact regarding the garage and the prior ordinance. However, there may be relevant evidence available regarding the garage on remand. The survey and testimony in evidence address the requirements of the 2014 UDO but do not purport to show whether the garage violated the ordinance in effect at the time of the structure's construction and whether the garage is consequently a continuing violation under the 2014 UDO.

¶ 33        Because there was no basis to apply the 2014 UDO to Appellants' pre-existing residence and garage, the Superior Court erred in affirming the BOA decision finding the structures in violation of the 2014 UDO.  However, Appellant conceded at the BOA hearing the garage was constructed without a permit, so we remand for further proceedings with respect to Appellants' garage.

### 2. *Vested Rights under North Carolina General Statute § 153A-344*

¶ 34        Appellants next challenge the Superior Court's affirmation of the BOA decision because the BOA decision directly conflicts with former North Carolina General Statute § 153A-344, which provided that:

> Amendments in zoning ordinances shall not be applicable or enforceable without consent of the owner with regard to buildings and uses for which either (i) building permits have been issued pursuant to G.S. 153A-357 prior to the enactment of the ordinance making the change or changes so long as the permits remain valid and unexpired pursuant to G.S. 153A-358 and unrevoked pursuant to G.S. 153A-362 . . . .

N.C. Gen. Stat. § 153A-344(b) (2017)[1] (repealed by S.L. 2019-111, § 2.2, as amended by S.L. 2020-25, § 51(b), eff. June 19, 2020) (recodified at N.C. Gen. Stat. § 160D-108(c) (2021)).

---

[1] While this case was ongoing, the statute changed in July 2019.  N.C. Gen. Stat. § 153A-344(b) (2019).  The changes in the statute do not make a substantive difference, but we use the version of the statute in effect in 2018 because that is when the citations that started this case were issued.

¶ 35        Appellants argue the property's development was authorized by the County via building permits, inspections, and occupancy certificates, so North Carolina General Statute § 153A-344 provides Appellants with a vested right to maintain their residence and garage where currently located.  The County was consequently barred from enforcing the UDO against Appellants without their written consent.  As a result, it was erroneous for the Superior Court to affirm the Board's retroactive application of the UDO to structures completed 5 to 10 years prior to the enactment of the UDO.  We agree in part.

¶ 36        North Carolina law provides a statutory vested right to maintain buildings constructed in conformity with a building permit, and the County presumed Appellants' residence was properly permitted since it had purged its records. Appellee had an opportunity to prove Appellants' property was not constructed in conformity with a building permit or the applicable ordinances, but instead chose to presume a permit was issued and only pursued setback violations under the 2014 UDO.  The absence of evidence of a permit should be held against the County, not the property owner.  *See Shearl*, 236 N.C. App. at 118, 762 S.E.2d at 882.  As to Appellants' garage, Appellant Earlene testified before the BOA that the garage was unpermitted.  Therefore, there was no permit that may grant Appellants a vested right to maintain their garage where located.

¶ 37        Vested rights in a zoning ordinance can be established through one of two means. *See Browning-Ferris Industries of South Atlantic, Inc. v. Guilford County Bd. of Adjustment*, 126 N.C. App. 168, 171, 484 S.E.2d 411, 414 (1997). Vested rights may be created by qualification with certain statutes or by qualification under the common law. *See id.* Appellants only assert a statutory vested right, and we consequently limit our discussion.

¶ 38        Issuance of a building permit is a necessary prerequisite to the creation of a vested statutory right under North Carolina General Statute § 153A-344. *See* § 153A-344(b); *see also Sandy Mush Properties, Inc. v. Rutherford County ex rel. Rutherford County Bd. of Com'rs*, 181 N.C. App. 224, 233, 638 S.E.2d 557, 563 (2007) (interpreting § 153A-344 as applied to an office building with a valid permit). Additionally, any such right created under North Carolina General Statute § 153A-344 may be limited by the precise language of the permit. *See Sandy Mush Properties*, 181 N.C. App. at 235–36, 638 S.E.2d at 564. Should a permit contain language such as "all work will comply with the State Building Code and all other applicable State and Local laws and ordinances," then any rights created under North Carolina General Statute § 153A-344 would be limited to rights to construct buildings in conformity with North Carolina law, including local zoning ordinances. *See id.*

¶ 39        Appellee argues, based upon the testimony of the Union County Zoning Administrator, that any permit issued to Appellants to construct their residence

would have included similar language. The BOA also appears to have considered the likelihood that any permit issued to Appellants would have declared setback requirements and that construction must comply with those requirements.

¶ 40     However, as to Appellants' residence, no evidence of the specific requirements of a building permit was presented. The only evidence regarding the permit was the statement by Mr. King that:

> we cannot verify whether or not a permit was issued because we purge our records after 6 years. . . . . It has been destroyed, so we don't know if there's a permit or not. *We're going to assume for the benefit of the resident that the permit was issued* and we're just going to go with that.

(Emphasis added.) The rest of the testimony before the BOA appears to focus on the 2 January 2018 survey, but the evidence does not address whether the residence's construction complied with a building permit or what the prior ordinance required in 2004. Additionally, the BOA made no findings as to the existence or nonexistence of a permit for Appellants' residence. According to the evidence and the County's concession it had purged its records and assumption that a permit was issued, we must also assume a permit was issued. Based upon the permit, Appellants have a vested right to maintain the residence where currently located. Appellee did not use its opportunity before the BOA to prove the absence of a permit for the residence, failure to comply with a permit, or that a permit was issued and expired but instead chose to assume a valid permit was issued to Appellants. Appellants have a vested

right under North Carolina General Statute § 153A-344 to maintain the residence where currently located. But since no permit was issued for the garage, Appellants have no vested right under North Carolina General Statute § 153A-344 to maintain the garage where it is located.

**C. Application of the Standard of Review to Findings of Fact**

¶ 41        This Court must next determine if the Superior Court correctly applied the whole record test to challenged findings of fact. *See Dellinger*, 248 N.C. App. at 323, 789 S.E.2d at 26. Our duty is to determine, after a review of the whole record, if there was substantial evidence to support the BOA decision. *Id.* "The whole record test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*" *Turik v. Town of Surf City*, 182 N.C. App. 427, 430, 642 S.E.2d 251, 253 (2007) (alterations and quotation omitted). But any "[f]acts found under misapprehension of the law will be set aside on the theory that the evidence should be considered in its true legal light . . . ." *State v. Moir*, 369 N.C. 370, 389, 794 S.E.2d 685, 698 (2016) (alteration in original) (quoting *Helms v. Rea*, 282 N.C. 610, 620, 194 S.E.2d 1, 8 (1973)). The BOA's sole conclusion of law is reviewed *de novo*. *Westminster Homes*, 140 N.C. App. at 102, 535 S.E.2d at 417.

Appellant assigns error to three specific findings of fact, and the BOA's sole conclusion of law.

### 1. *Board of Adjustment Finding of Fact No. 4*

The BOA Finding of Fact No. 4 states: "A portion of the principal residential structure is located in the 20-foot side yard setback. The date that the encroachment first occurred is unknown." Appellant argues there was no competent evidence presented at either BOA hearing to support this finding, and that the testimony by the Union County Zoning Administrator indicates the County did not have sufficient information to conclusively determine if the house encroached upon the setback line. This finding is accurate in that the survey does show an encroachment, and the Zoning Administrator testified that an encroachment is evidenced by the survey, but it is the extent of the encroachment that is unknown. Regardless, the survey and testimony were based upon the 2014 UDO and thus this finding is not relevant to the issue of setback violations for the reasons stated above. This finding only shows that the property would be in violation of the 2014 UDO if the residence was built after the effective date of the UDO, not that Appellants' property is a continuing violation of the prior ordinance.

### 2. *Board of Adjustment Finding of Fact No. 8*

The BOA Finding of Fact No. 8 states: "At the time Thompson purchased the Thompson Residence, she was aware of both violations of the side yard setbacks."

Appellants argue this finding is at odds with Appellant Earlene's testimony at the hearing, and that Appellants were only aware of a potential permitting issue with the garage. After a review of the evidence available to the BOA, we agree with Appellants' arguments for the reasons set forth in the prior section. Appellee had the burden of proving a violation of the 2014 UDO and failed to produce evidence to carry that burden. The BOA should not have applied the 2014 UDO against Appellants' property, and Appellants' knowledge of a survey showing an encroachment based upon the 2014 UDO has no bearing on whether either structure was in violation of the ordinance in effect when the structures were built. Ultimately, Appellants' knowledge of a potential violation of the 2014 UDO is not relevant.

### 3. *Board of Adjustment Finding of Fact No. 12*

The BOA Finding of Fact No. 12 states: "The various depictions and testimony of the location of the Thompson Residence and the accessory detached garage all show both buildings encroach into the required side yard setbacks." Appellants argue this finding is erroneous for the same reasons that Finding No. 4 is erroneous; there is no competent evidence to support the finding. Again, this finding is accurate because the survey does show an encroachment, but the survey was based upon the 2014 UDO and thus this finding is not relevant to the issue of violation for the reasons stated above. For the same reasons as Finding No. 4, we conclude it was error for the Superior Court to affirm the BOA's findings applying the UDO when it was not shown

that Appellants' property violated the prior ordinance in effect when the structures were built.

### 4. *Board of Adjustment Conclusion of Law*

¶ 46        Appellants also challenge the Board of Adjustment's sole conclusion of law. The BOA concluded that "both the Thompson Residence and the accessory detached garage encroach into the side yard setbacks and are thus in violation of the Union County Development Ordinance."  As discussed above, this conclusion of law is based upon application of the 2014 UDO, but Appellee failed to show that the structures were in violation of the ordinance in effect when they were built.  The Superior Court erred in affirming the BOA's conclusion of law.

## IV.    CONCLUSION

¶ 47        We conclude Appellants waived the defense of the statutes of limitations in North Carolina General Statutes §§ 1-49(3) and 1-51(5) as to the civil penalty and Notices of Violation by failure to raise this defense before the BOA.  We conclude the Superior Court erred by affirming the BOA's decision because Appellee failed to carry its burden of proving the residence and garage were in violation of the 2014 UDO.  As to Appellants' residence, the trial court's order is reversed.  As to Appellants' garage, the trial court's order is vacated and remanded with instructions to remand to the BOA for further proceedings consistent with this opinion, with the burden upon Appellee to prove a zoning violation based upon the applicable ordinances.

REVERSED IN PART; VACATED AND REMANDED IN PART.

Judges ARROWOOD and JACKSON concur.