IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-495

Filed 2 January 2024

Lenoir County, No. 22CVS756

TOWN OF LA GRANGE,
NORTH CAROLINA, Petitioner,

v.

COUNTY OF LENOIR,
NORTH CAROLINA, and
COPART OF CONNECTICUT, INC., Respondents.

Appeal by petitioner from order entered on 28 December 2022 by Judge Imelda J. Pate in Lenoir County Superior Court. Heard in the Court of Appeals 28 November 2023.

> *Cauley Pridgen, P.A., by Gabriel Du Sablon, James P. Cauley, III, and Emily C. Cauley-Schulken, for petitioner-appellant.*
>
> *Morningstar Law Group, by Keith P. Anthony and William J. Brian, Jr., for respondent-appellee-Copart of Connecticut, Inc.*
>
> *Sumrell Sugg, P.A., by David B. Baxter, Jr. and James H. Ferguson, III, for respondent-appellee-County of Lenoir, North Carolina.*

FLOOD, Judge.

The Town of La Grange (the "Town") appeals from the trial court's affirmation of the Lenoir County Planning Board's (the "Planning Board") determination that Copart of Connecticut Inc.'s ("Copart") land was correctly classified as "Auction Sales"

under Lenoir County's (the "County") Zoning Ordinance. For the reasons discussed below, we affirm.

## I. Facts and Procedural Background

The pertinent facts of the case before us arise from a land use dispute between the Town, Copart, and the County. The Town is situated within the County, and Copart owns a 151-acre tract of land (the "Property") that abuts the Town's highest-producing public water supply wellhead. The Property is not located within the Town's municipal limits. An existing junkyard is located across the street.

Copart is in the business of selling damaged and undamaged vehicles on behalf of insurance companies, licensed dealers, financial institutions, charities, and municipalities. Copart receives these vehicles from all over the country, and upon delivery at Copart's facility, each vehicle is inspected, photographed, and catalogued in preparation for sale. The vehicles are then sold by auction through an online website. The vehicles are "never stacked and remain in short-term storage for an average of only [fifty] to [sixty] days." While Copart charges a fee to the organization on behalf of which it is selling the vehicle, Copart itself never holds the title to any vehicle on its lot.

On 29 December 2020, a zoning official for the County issued a certificate of zoning compliance to Copart, concluding Copart's intended use of its land aligned most closely with "Auction Sales," which is a permitted use of right within the County's Commercial District. Upon learning of the zoning official's determination

that Copart's land use most closely conformed with "Auction Sales," the Town appealed the determination to the Planning Board.

In its appeal to the Planning Board, the Town argued Copart's intended use of the Property is more akin to a "Junk/Salvage Yard" as defined by the Zoning Ordinance, and that such a use is not permitted within the County's Commercial District. The Town further argued that Copart's proposed use violated the County's separate "Ordinance Regulating Junkyards and Automobile Graveyards" (the "Junkyard Ordinance").

On 19 July 2022, following a lengthy evidentiary hearing, the Planning Board unanimously affirmed the determination by the zoning official that the Property was appropriately classified as "Auction Sales" and that the "Junkyard Ordinance [was] inapplicable to the intended use" of the Property.

On 17 August 2022, the Town filed a petition for writ of certiorari to the Lenoir County Superior Court, contending the Planning Board made errors of law, made findings of fact that were unsupported by substantial evidence in the whole record, and had acted in an arbitrary and capricious manner.

On 28 December 2022, the trial court entered an order affirming the Planning Board's classification of the Property as "Auction Sales." In its order, the trial court made, in pertinent part, the following conclusions:

> 20. [The Town's] first claim raised . . . is whether the Planning Board[']s decision to affirm Copart's intended use

as permitted under the Zoning Ordinance was supported by competent evidence in the record.

. . . .

22. In particular, the Planning Board's findings in the written [o]rder based upon the evidence presented and testimony found that Copart's intended use of the Property was correctly classified as "Auction Sales" under the Zoning Ordinance. The Planning Board made findings, supported by the record evidence that:

- Copart's automobiles are only temporarily stored on the Property prior to auction. (R. Ex.1, p.2 ¶ 9)
- Copart's automobiles temporarily stored on the Property are sold to the highest bidder. (R. Ex. 1, p. 2 ¶ 10).
- Copart's use does not involve dismantling, demolition, or abandonment of automobiles on the Property. (R. Ex. 1, p. 2 ¶ 11).
- Copart does not intend to place or store scrap metals, waste paper, rags, or other scrap materials or used building materials on the Property. (R. Ex. 1, p.2 ¶ 12).
- Copart's automobiles will be parked in an organized fashion and [are] not stacked or placed in piles. (R.Ex.1, p.2 ¶13).
- Copart's automobiles vary in condition with some automobiles having no damage or minor damage while others hav[e] more damage. (R. Ex. 1, p.3 ¶19).
- The majority of Copart's automobiles will be sold to end-users and will be restored to operation. (R. Ex.1, p.3 ¶ 20).
- Copart's intended use did not pose the same environmental and safety concerns as a junkyard poses to the community. (R.Ex.1, p.3 ¶¶ 22-23).

23. [The Town's] second claim . . . is whether the Planning Board properly interpreted the County's relevant ordinances when it found Copart's intended use was more similar to auction sales or automobile sales than a "junkyard."

. . . .

25. The Zoning Ordinance defines a "Junk/Salvage Yard" as "[t]he use of more than [] (600) square feet of any lot for storage, keeping or accumulation of material, including scrap [sic] metals, waste paper, rags, or other scrap [sic] materials, or used building materials, or for the dismantling, demolition or abandonment of automobiles or other vehicles or machinery or parts thereof.

26. The term "auction" is given its ordinary meaning, a sale of property to the highest bidder.

. . . .

29. Considering the entirety of the record evidence, the [c]ourt concludes that the Planning Board's Findings of Fact in the written [o]rder were supported by competent, material and substantial evidence and the Board's findings supported the Board's Conclusions of Law in the written [o]rder wherein the [Planning] Board concluded Copart's intended use of the Property as "Auction Sales" and that the "Junkyard" Ordinance is inapplicable to the intended use by Copart.

30. [The Town's] third claim . . . is that the Board's decision was arbitrary and capricious because the decision was not based [o]n "fair and careful consideration." The [trial c]ourt applies the whole record test to this claim, examining all record evidence.

Ultimately, the trial court concluded that the Planning Board's decision was "supported by competent, material, and substantial evidence[,]" and that the Town could not establish that the Planning Board's decision was arbitrary and capricious. The Town timely appealed.

## II. Jurisdiction

This appeal is properly before this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) as the trial court's order affirming the Planning Board's decision was a final judgment on the merits. *See* N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III. <u>Analysis</u>

On appeal, the Town argues the trial court (A) applied incorrect standards of review and (B) erred by upholding the decision of the Planning Board. On both points, we disagree.

### A. Trial Court's Standard of Review as to Planning Board's Decision

The Town argues the trial court applied the incorrect standard of review to the issues on appeal from the Planning Board's decision.

#### 1. <u>Standard of Review</u>

As to appellate review of a superior court order regarding an agency decision, "[t]he process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Amanini v. N.C. Dep't of Hum. Res.,* 114 N.C. App. 668, 675, 443 S.E.2d 114, 118–19 (1994) (citations omitted). Ultimately, upon review, it is this Court's duty to conclude whether the trial court applied the correct standard of review, and if so, whether the appropriate conclusion under the standard was reached. *See Amanini,* 114 N.C. App. at 674, 443 S.E.2d at 118.

#### 2. <u>Superior Court's Standard of Review of Planning Board's Decision</u>

"When the Superior Court grants certiorari to review a decision of the Board, it functions as an appellate court rather than a trier of fact." *Hopkins v. Nash Cnty.*, 149 N.C. App. 446, 447, 560 S.E.2d 592, 593–94 (2002) (citation omitted).

When a petitioner "questions (1) whether [a board's] decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test." *ACT-UP Triangle v. Comm'n for Health Servs. of the State of N.C.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting *In re Appeal by McCrary*, 112 N.C. App 161, 165, 435 S.E.2d 359, 363 (1993)). "When utilizing the whole record test . . . the reviewing court must examine all competent evidence (the whole record) in order to determine whether the agency decision is supported by substantial evidence." *Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 14, 565 S.E.2d 9, 17 (2002) (internal quotation marks omitted). "The 'whole record' test does not allow the reviewing court to replace the [b]oard's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it de novo." *Thompson v. Wake Cnty. Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

If, however, "a petitioner contends the [b]oard's decision was based on an error of law, de novo review is proper." *Mann Media, Inc.*, 356 N.C. at 13, 565 S.E.2d at 17 (citation and internal quotation marks omitted). "Under de novo review a reviewing court considers the case anew and may freely substitute its own interpretation of an

ordinance for a board['s] [] conclusions of law." *Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjustment*, 365 N.C. 152, 156, 712 S.E.2d 868, 871 (2011).

### i. <u>The Whole Record Test</u>

In its appeal to this Court, the Town states that the trial court's "glossing over most of [the Town's] contentions[ ] is evidence that the [t]rial [c]ourt nevertheless applied the improper scope of review to its meager analysis." To support its argument, the Town points to the language used in the trial court's conclusions. The Town states that the trial court's use of the phrases, "considering the entirety of the record evidence," and "were supported by competent, material, and substantial evidence" in Conclusion of Law 29 evinces the trial court's failure to apply a *de novo* standard of review.

The correct standard of review, however, is the "whole record test," given the allegations made by the Town in its petition for writ of certiorari stated that the Planning Board's decision was "unsupported by [] competent, material, and substantial evidence in view of the entire record." *See ACT-UP Triangle*, 345 N.C. at 706, 483 S.E.2d at 392 (stating that the "whole record test" is applied when the issue at bar is whether an agency's decision was supported by substantial evidence).

Here, under a "whole record test" review, the trial court had to show that it examined "all competent evidence (the whole record) in order to determine whether the agency decision [was] supported by substantial evidence." *Mann Media, Inc.*, 356

N.C. at 14, 565 S.E.2d at 17 (internal quotation marks omitted). Evidence that the trial court reviewed the whole record before determining the Planning Board's decision was supported by substantial evidence can be found throughout its order, but particularly in its conclusions of law. Conclusion of Law 22 lists pieces of evidence and testimony that support the Property's classification as "Auction Sales," indicating the trial court considered the "whole record" when determining the Planning Board's decision was supported by substantial evidence.

In Conclusion of Law 22, the trial court highlighted evidence found throughout the record that shows: Copart's vehicles are sold *via* online auction; the vehicles are only stored temporarily on the Property and are never dismantled, demolished, or abandoned; some vehicles have no damage or minor damage; and the vehicles are never stacked or placed in piles.

For those reasons, our review of the trial court's order concludes the trial court applied the whole record test and reached the correct conclusion that the Planning Board's decision was supported by substantial evidence. *See ACT-UP Triangle,* 345 N.C. at 706, 483 S.E.2d at 392.

## ii. *De Novo* Review

The Town further argues the trial court failed to apply a *de novo* standard of review to the question of whether the "Junkyard Ordinance" was applicable to Copart's intended land use. To support this contention, the Town suggests the language used in Conclusion of Law 29, in which the trial court references "record

evidence" being "competent, material and substantial," evidences use of the "whole record test" rather than a *de novo* review. When read in context with the surrounding conclusions of law, however, it is clear the trial court intended to convey that it had reviewed all of the evidence in the Record and that the evidence supported the legal conclusions.

As stated above, Conclusion of Law 22 recites several findings regarding Copart's use of the Property. Further, Conclusion of Law 25 restates the Zoning Ordinance's definition of "Junk/Salvage Yard" as being a lot for "the dismantling, demolition, or abandonment of automobiles or other vehicles or machinery or parts[,]" while Conclusion of Law 26 states that "[t]he term 'auction' is given its ordinary meaning, a sale of property to the highest bidder."

For those reasons, we conclude the trial court applied the correct *de novo* standard of review to the questions of law raised by the Town and ultimately reached the correct conclusion. *See Amanini,* 114 N.C. App. at 674, 443 S.E.2d at 118.

**B. Trial Court's Determination as to Planning Board's Decision**

The second argument the Town makes on appeal is that the trial court erred by upholding the decision of the Planning Board because (1) it incorrectly concluded Copart's land use was appropriately classified as "Auction Sales" and (2) taken *in pari materia*, under both the Zoning Ordinance and Junkyard Ordinance, Copart's use more closely conformed with a "Junk/Salvage Yard," or "Automobile Graveyard."

With respect to the Town's first argument, we disagree; accordingly, we need not address the Town's second argument.

## 1. Standard of Review

This Court reviews questions of law presented in challenges to zoning decisions *de novo*. *See Myers Park Homeowners Ass'n v. City of Charlotte*, 229 N.C. App. 204, 208, 747 S.E.2d 338, 342 (2013). When interpreting a local ordinance, the basic rule is to "ascertain and effectuate the intention of the municipal legislative body." *Darbo v. Old Keller Farm Prop. Owners' Ass'n*, 174 N.C. App 591, 594, 621 S.E.2d 281, 284 (2005) (citation omitted). Undefined terms are given their ordinary meaning and significance. *See Morris Commc'n Corp.,* 365 N.C. at 157, 712 S.E.2d at 872. When the question of law involves interpretation of an ordinance, this Court applies basic principles of statutory construction, so that "words and phrases of a statute may not be interpreted out of context, but . . . as a composite whole so as to harmonize with [the] other statutory provisions and effectuate legislative intent." *Duke Power Co. v. City of High Point*, 69 N.C. App. 378, 387, 317 S.E.2d 701, 706 (1984). Additionally, when issues of statutory construction arise, "the construction adopted by those who execute[d] and administer[ed] the law in question" should be given great consideration. *Darbo*, 174 N.C. App at 594, 621 S.E.2d at 283.

Finally, "the law favors uninhibited free use of private property over governmental restrictions." *Byrd v. Franklin City*, 237 N.C. App. 192, 201, 765 S.E.2d 805, 811 (2015) (Hunter, J., concurring in part). The general rule is that a zoning

ordinance, being in derogation of common law property rights, should be construed in favor of the free use of property. *See Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966); *see City of Sanford v. Dandy Signs, Inc.,* 62 N.C. App. 568, 569, 303 S.E.2d 228, 230 (1983).

2. <u>Superior Court's Conclusion that Copart's Business is Auction Sales</u>

On appeal, the Town does not challenge any findings of fact, but rather argues that by concluding Copart's business and land use is more closely aligned with "Auction Sales," rather than a "Junk/Salvage Yard," the trial court "has elevated form over substance, ignoring the manner in which the land itself was to be used." The Town claims that because the term "Auction Sales" is not defined within the Zoning Ordinance, it should be given its ordinary and plain meaning, which here, should be taken to mean a place "where goods are sold to the public who are assembled in one place for the auction." In essence, the Town argues that Copart's land use cannot be accurately described as "Auction Sales" because the buyers of Copart's vehicles do not physically assemble in one place to bid. This argument cherry-picks one understanding of the term "auction" while excluding the even further simplified definition—"a sale of property to the highest bidder." *Auction*, MERRIAM-WEBSTER DICTIONARY (11th ed. 2022).

Under our *de novo* review, while applying the basic principles of statutory construction, this Court seeks to ascertain the intention of the legislative municipal body, while also favoring the uninhibited free use of property. *See Darbo,* 174 N.C.

App at 594, 621 S.E.2d at 283; *see Byrd,* 237 N.C. App. at 201, 765 S.E.2d at 811.

Here, the Town does not challenge the sufficiency of the trial court's findings of fact

regarding Copart's land use; rather, the Town challenges the conclusion that Copart's

proposed use was classified as "Auction Sales," rather than a "Junk/Salvage Yard."

While the term "Auction Sales" is undefined in the Zoning Ordinance, the term

"Junk/Salvage Yard" is defined as,

> [t]he use of more than [] (600) square feet of any lot for the storage, keeping or accumulation of material, including scrap metals, waste paper, rags, or other scrap materials, or used building materials, or for the dismantling, demolition or abandonment of automobiles or other vehicles or machinery or parts thereof. **ALL Junk/Salvage Yards must also comply with Lenoir County's Junkyard and Automobile Graveyard Ordinance**."

The Junkyard Ordinance defines a "junkyard" as "an establishment or place of

business, which is maintained[,] operated[,] or used for storing[,] keeping[,] buying[,]

or selling junk[,] or for the maintenance of an automobile graveyard." Further, an

"automobile graveyard" is defined as,

> [a]ny establishment or place of business which is maintained[,] used[,] or operated for storing[,] keeping[,] buying[,] or selling wrecked[,] scrapped[,] ruined[,] dismantled[,] or inoperable motor vehicles and which are not being restored to operation regardless of the length of time which individual motor vehicles are stored or kept at said establishment or place of business.

The facts in the Record tend to show Copart: sells vehicles through an online

auction system; temporarily stores the vehicles on the Property prior to auction; sells

vehicles that are both damaged and undamaged; and does not dismantle, demolish, or abandon any vehicles on the Property. Conspicuously absent from the Record are any facts to indicate Copart intends to use the Property to keep or accumulate scrap metals, waste papers, rags or building materials. Further, no facts in the Record tend to show that Copart intends to use the Property to store abandoned vehicles or parts of vehicles.

Our *de novo* review of the Record reveals a mismatch between the Zoning Ordinance's definition of "Junk/Salvage Yard" and how Copart intends to use the Property. Given the facts in the Record, we conclude that Copart's business model— selling vehicles with varying degrees of damage via online auction and their removal within sixty days—aligns more closely with the common definition of "auction" than the Zoning Ordinance's definition of a "Junk/Salvage Yard." Further, even if we considered the Zoning Ordinance and Junkyard Ordinance *in pari materia*, we still reach the same conclusion, because the facts in the Record do not demonstrate Copart used the Property to accumulate abandoned vehicles that are not being restored to operation.

We therefore hold that both the Planning Board and the trial court correctly upheld the zoning official's classification of Copart's intended use of the Property as "Auction Sales." Having concluded the Planning Board and trial court were correct in upholding the zoning official's determination that Copart's land use was

appropriately classified as "Auction Sales," we need not address the Town's second argument.

## IV. <u>Conclusion</u>

For the aforementioned reasons, we hold the trial court applied the correct standards of review, made the correct conclusion under the standards of review, and did not err when upholding the Planning Board's determination. The trial court's order is affirmed.

AFFIRMED.

Judges TYSON and ZACHARY concur.